JOHN-PAUL MADDEN, ESQUIRE – ID 024171998
MADDEN & MADDEN, P.A.
108 KINGS HIGHWAY EAST - SUITE 200
POST OFFICE BOX 210
HADDONFIELD, NEW JERSEY 08033
TEL: (856) 428-9520

Robert B. Ellis, P.C. (pro hac vice pending)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
TEL: (312) 862-2000

Attorney for Defendants Aon Risk Services Companies, Inc., Aon Risk Services Central, Inc.,
Aon Risk Services Southwest, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## (TRENTON VICINAGE)

| | |
|---|---|
| ROBERT D. FERGUSON, a Florida individual; KANSA INTERNATIONAL CORPORATION, LTD., BANKRUPTCY ESTATE, a Finnish Corporation; and IMIPOLEX LLC, a Florida limited liability company, as successor in interest to CJH Investments Limited Partnership, a Nevada limited partnership; all as judgment creditors of Raydon Underwriting Management Company Limited, a Bermudian corporation, and as assignees and subrogees of Clarendon National Insurance Company and Clarendon America, | CIVIL ACTION NO: |
| | *Removed from* Superior Court of New Jersey Law Division – Mercer County DOCKET NO. MER-L-000377-19 |
| Plaintiffs, | **NOTICE OF REMOVAL** |
| v. | |
| AON RISK SERVICES COMPANIES, INC., a Maryland corporation; AON RISK SERVICES CENTRAL, INC., an Illinois corporation, as successor by merger to Aon Financial Services Group, Inc.; and AON RISK SERVICES SOUTHWEST, INC. f/k/a Aon Risk Services of Texas, Inc., | |
| Defendants. | |

LAW OFFICES
MADDEN & MADDEN
A PROFESSIONAL CORPORATION
SUITE 200
108 KINGS HIGHWAY EAST
P.O. BOX 210
HADDONFIELD, NEW JERSEY 08033-0389

Defendants Aon Risk Services Companies, Inc., Aon Risk Services Central, Inc. and Aon Risk Services Southwest, Inc., (collectively "Aon" or "Defendants"), pursuant to 28 U.S.C. §§ 1441 and 1446, hereby remove this action from the Superior Court of New Jersey – Law Division, Mercer County, to this Court. As grounds for removal, Defendants state the following:

1.  Plaintiffs commenced this action by filing a Complaint and Jury Demand on or about February 22, 2019 (the "Plaintiffs' Complaint") against Aon. Please See Exhibit A, Complaint and Jury Demand marked as filed on February 22, 2019. Plaintiffs' Complaint alleges that Plaintiffs are creditors under a $92 million judgment rendered in Bermunda against Raydon Underwriting Management Company, Ltd. ("Raydon"). Plaintiffs claim that, after unsuccessfully attempting to satisfy the judgment against Raydon, Plaintiffs sought recovery from Raydon's professional liability insurers. Plaintiffs further allege that two of Raydon's excess professional liability insurers, who issued policies of $10 million each, denied coverage for a substantial portion of the judgment because Aon, Raydon's insurance broker, allegedly failed to timely place those carriers on notice of the claims. Plaintiffs' Complaint asserts causes of action against Aon for professional negligence, breach of contract and declaratory judgment. Plaintiffs seek recovery of the portion of the judgment that, in Plaintiffs' view, would have been covered by Radon's insurers but for Aon's alleged conduct which, according to Plaintiffs' Complaint, is far in excess of $75,000, exclusive of interest and costs. Aon denies Plaintiffs' allegations and denies that it is liable to Plaintiffs in any respect.

2.  Defendants, Aon Risk Services Central, Inc., and Aon Risk Services Southwest, Inc. were served with a copy of the Plaintiffs' Complaint on or about March 7, 2019. Defendant

LAW OFFICES
MADDEN & MADDEN
A PROFESSIONAL CORPORATION
SUITE 205
108 KINGS HIGHWAY EAST
P.O. BOX 210
HADDONFIELD, NEW JERSEY 08033-0389

2

Aon Risk Services Companies, Inc. was served with a copy of the Plaintiffs' Complaint on or about March 8, 2019.

3.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and this action is between citizens of different states and citizens or subjects of a foreign state, as set forth below.

4.     Plaintiff Robert D. Ferguson is, according to the Plaintiffs' Complaint, an individual and a resident of the State of Florida and therefore, upon information and belief and based on a reasonable inquiry into sources at their disposal, Defendants have a good faith belief, and on that basis assert, that Robert D. Ferguson is a citizen of the State of Florida.

5.     Plaintiff Kansa International Corporation, Ltd., Bankruptcy Estate is, according to Plaintiffs' Complaint, a Finnish corporation with its principal place of business in Helsinki, Finland and therefore is a citizen of Finland.

6.     Plaintiff Imipolex, LLC is, according to Plaintiffs' Complaint, a Florida limited liability company with a principal place of business in the State of Florida.  According to the Articles of Organization of Imipolex, LLC filed with the State of Florida, Divisions of Corporations on November 6, 2003 the managing member of Imipolex, LLC is Joseph W. Jacobs, a citizen of the State of Florida.  Please see Exhibit B, attached hereto.  The Articles of Organization do not identify any other members of Imipolex, LLC and, after a reasonably diligent search of sources at their disposal, including public documents and court filings, Defendants are unable to identify any other members of Imipolex, LLC or their citizenship.  Accordingly, based on a reasonable inquiry into the facts alleged in Plaintiffs' Complaint and sources at their disposal, including public records and court filings, Defendants assert that no members of

LAW OFFICES
MADDEN & MADDEN
A PROFESSIONAL CORPORATION
SUITE 200
108 KINGS HIGHWAY EAST
P.O. BOX 210
HADDONFIELD, NEW JERSEY 08033-0389

3

Imipolex, LLC are citizens of the States of Maryland, Illinois or Texas. *See, e.g., Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99 (3d Cir. 2015); *Laurel Gardens, LLC v. MJL Enterprises, LLC*, 2016 WL 80639, at *3 (D.N.J. Jan. 7, 2016).

7.    Defendant Aon Risk Services Companies, Inc. is a Maryland corporation with a principal place of business in the State of Illinois and is therefore a citizen of the States of Maryland and Illinois.

8.    Defendant Aon Risk Services Central, Inc. is an Illinois corporation with a principal place of business in the State of Illinois and is therefore a citizen of the State of Illinois.

9.    Defendant Aon Risk Services Southwest, Inc. is a Texas corporation with a principal place of business in the State of Texas and is therefore a citizen of the State of Texas.

10.    The amount in controversy, exclusive of interest and costs, exceeds $75,000.00. As set forth above, Plaintiffs allege they are creditors under a judgment in excess of $92 million and are entitled to damages from Defendants related to a purported lapse in excess liability insurance coverage.  Plaintiffs allege that two excess liability insurers underwrote excess liability policies each with coverage limits of $10,000,000 and that those excess carriers have disclaimed coverage under those policies as a result of alleged acts and/or omissions of Defendants. According to the Plaintiffs' Complaint, Plaintiffs seek to recover under the excess liability policies and thus seek damages from Defendants in excess of $75,000, exclusive of interest and costs.

11.    This Court therefore has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and removal of this action to this Court is therefore proper pursuant to 28 U.S.C. §§ 1441 and 1446.

LAW OFFICES
MADDEN & MADDEN
A PROFESSIONAL CORPORATION
SUITE 200
108 KINGS HIGHWAY EAST
P.O. BOX 210
HADDONFIELD, NEW JERSEY 08033-0389

4

12.     This Notice of Removal is filed within thirty (30) days of the service of the Plaintiffs' Complaint on Aon Risk Services Central, Inc., Aon Risk Services Southwest, Inc., and Aon Risk Services Companies, Inc.

13.     All Defendants in this action join in the removal of this action.

14.     Copies of all process, pleading, and orders on file with the Superior Court of New Jersey – Law Division, Mercer County, Civil Part are annexed hereto as Exhibit C pursuant to 28 U.S.C. § 1446(a).

15.     The Defendants will promptly give written notice of the filing of this Notice of Removal and will file a copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey – Law Division, Civil Part in Mercer County pursuant to 28 U.S.C. § 1446(d).

Respectfully submitted,

MADDEN & MADDEN, P.A.
Attorney for Defendants

*/s/John-Paul Madden*

By:     _____
John-Paul Madden, Esquire

Robert B. Ellis, P.C. (pro hac vice pending)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
TEL:  (312) 862-2309

Dated:  April 5, 2019

LAW OFFICES
MADDEN & MADDEN
A PROFESSIONAL CORPORATION
SUITE 200
108 KINGS HIGHWAY EAST
P.O. BOX 210
HADDONFIELD, NEW JERSEY 08033-0389

**Exhibit A**

McCusker, Anselmi, Rosen & Carvelli, P.C.
Robert E. Bartkus (#00955 1977)
rbartkus@marc.law
210 Park Avenue, Suite 301
Florham Park, NJ 07932
Telephone: (973) 635-6300
Facsimile: (973) 635-6363

Szaferman, Lakind, Blumstein & Blader, PC
Arnold C. Lakind (#0025819730)
Craig J. Hubert (#0307221990)
101 Gravers Mill Road, Suite 200
Lawrenceville, NJ 08648
Telephone: (609) 275-0400
Facsimile: (609) 275-4511

Attorneys for Plaintiffs Robert D. Ferguson,
Kansa International Corporation, Ltd.,
Bankruptcy Estate, and Imipolex LLC

| | |
|---|---|
| ROBERT D. FERGUSON, a Florida individual; KANSA INTERNATIONAL CORPORATION, LTD., BANKRUPTCY ESTATE, a Finnish corporation; and IMIPOLEX LLC, a Florida limited liability company, as successor in interest to CJH Investments Limited Partnership, a Nevada limited partnership; all as judgment creditors of Raydon Underwriting Management Company Limited, a Bermudian corporation, and as assignees and subrogees of Clarendon National Insurance Company and Clarendon America, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION—MERCER COUNTY DOCKET NO. MER-L-          -19 |
| Plaintiffs, | Civil Action |
| v. | **Complaint for Negligence, Breach of Contract and Declaratory Relief and Jury Demand** ----------- |
| AON RISK SERVICES COMPANIES, INC., a Maryland corporation; AON RISK SERVICES CENTRAL, INC., an Illinois corporation, as successor by merger to Aon Financial Services Group, Inc.; and AON RISK SERVICES SOUTHWEST, INC. f/k/a Aon Risk Services of Texas, Inc, | |
| Defendants. | |

Plaintiffs Robert D. Ferguson, Kansa International Corporation, Ltd., Bankruptcy Estate and Imipolex LLC (collectively, "Plaintiffs"), with addresses listed below, allege:

## Introduction

1.　　This Complaint arises from the Aon defendants' apparent failure to communicate critical claim information to liability insurers, with potentially catastrophic consequences.[1] Aon styles itself "the leading global provider of risk management services, insurance and reinsurance brokerage…, delivering distinctive client value via innovative and effective risk management and workforce productivity solutions."[2] In this case, Aon had assumed responsibility for notifying insurers of claims under a $100 million professional errors and omissions liability program. In connection with claims made by two Clarendon insurance affiliates, however, Aon notified the primary insurer but may have failed to notify all excess insurers above the $15 million primary limits. As a result of Aon's negligence two excess insurers, Reliance Insurance Company and Executive Risk Specialty Insurance Company, have denied Plaintiffs' claims and refused to perform under their respective policies.

2.　　Plaintiffs are subrogated to the rights of two New Jersey-domiciled insurance companies, Clarendon America Insurance Company and Clarendon National Insurance Company.[3] Clarendon was seriously damaged after Raydon Underwriting Management Company Ltd., an insurance managing general agent, negligently recommended that Clarendon participate in a flawed reinsurance program known as

---

[1].　　The three Aon defendants are referred to collectively as "Aon" unless otherwise indicated.

[2].　　Aon plc Annual Report Pursuant to Section 13 or 15(d) of the Securities and Exchange Act of 1934, for the fiscal year ending Dec. 31, 2016, p. 3.

[3].　　For ease of reference both companies will be collectively referred to as "Clarendon."

PA/LMX.  After Clarendon sustained massive losses in the LMX program, Plaintiffs indemnified Clarendon for its losses and became subrogated to its claims against the agent.  Plaintiffs eventually obtained a $92 million judgment against Raydon for its covered errors and omissions.  After exhausting efforts to satisfy the judgment against Raydon, Plaintiffs turned to its liability insurers.

3.      As Raydon's insurance broker, Aon owed a duty not only to its client but also to third-party claimants who could lose the benefit of a responsive insurance policy if their claims were mishandled.  Well-settled New Jersey law holds such claimants are within the "zone of harm"—i.e., are foreseeable victims—of a broker's negligent failure to properly handle a claim.  Aon knew (or should have known) that failing to provide timely notice of Clarendon's claim put at risk Clarendon's ability to recover its losses.

4.      This action seeks to hold Aon accountable for its apparent negligence. Plaintiffs are pursuing coverage under the policies and are confident they will show that the policies respond to their judgment.[4]  But if any insurers do avoid coverage it will be the direct result of Aon's negligent failure to perform Aon's professional duties.

**The Parties**

5.      Plaintiff Robert D. Ferguson (Ferguson) is a resident of Florida, with a business address at 2549 Barrington Circle, Tallahassee, Florida 32308, and at times relevant to the claims giving rise to Plaintiffs' damages, was a resident of New Jersey. Ferguson sues as assignee and subrogee of Clarendon and as judgment creditor of Raydon Underwriting Management Company Ltd.

---

[4].      Plaintiffs have filed suit in this County against the primary and second excess insurers, and filed a claim in the liquidation proceedings of the first layer excess insurer.  The Mercer County case, which is still pending, is *Robert D. Ferguson, et al. v. Travelers Indemnity Company, et al.*, Docket No. MER-L-2911-11.

6.      At all times mentioned herein, Plaintiff Kansa International Corporation, Ltd., Bankruptcy Estate (Kansa), was and is a Finnish corporation with its principal place of business located at Eteläesplanadi 14, 00131, Helsinki, Finland.  Kansa sues as assignee and subrogee of Clarendon and as beneficial judgment creditor of Raydon.

7.      At all times mentioned herein, Plaintiff Imipolex LLC (Imipolex), successor in interest to CJH Investments Limited Partnership (CJH), a Nevada limited partnership, was and is a Florida limited liability company with its principal place of business located at 2549 Barrington Circle, Tallahassee, Florida 32308.  Imipolex has succeeded to the interests of CJH as assignee and subrogee of Clarendon, and as beneficial judgment creditor of Raydon.

8.      Plaintiffs Ferguson, Kansa, and CJH, predecessor in interest to Plaintiff Imipolex, are former shareholders of Lion Holding, Inc.  Lion is the former owner of Clarendon America Insurance Company and Clarendon National Insurance Company, both admitted property/casualty insurers domiciled in New Jersey and having their statutory home office in Trenton, New Jersey.  In February 1999 Plaintiffs sold Lion and the Clarendon companies to Hannover Rückversicherungs-Aktiengesellschaft (Hannover), one of the world's largest reinsurers.  Under terms of written agreements between Plaintiffs and Hannover and Clarendon and under principles of equity, Plaintiffs are holders by assignment and subrogation of all Clarendon rights and claims against third parties relating to a reinsurance program known as PA/LMX.

9.      Plaintiffs are creditors under a judgment rendered September 28, 2011, by the Supreme Court of Bermuda in favor of Plaintiff Ferguson and against Raydon in the amount of $92.137 million.  The judgment was received in Ferguson's capacity as authorized representative of all former shareholders of Lion Holding, Inc.  The judgment, which Plaintiff Ferguson recorded in this Court (Docket No. 294093-11) on or about October 19, 2011, is final, is not subject to any appeal, and is enforceable in the same manner and is entitled to the same full recognition as a local judgment.  (New Jersey

Foreign Country Money-Judgments Recognition Act, N.J.S. 2A:49A-19.) All Plaintiffs are beneficiaries of and interest holders in the Raydon judgment.

10.     At all times mentioned herein, on information and belief, Defendant Aon Risk Services Companies, Inc., is and was a Maryland corporation with its principal place of business in Chicago, Illinois. Defendant Aon Risk Services Companies, Inc., engaged in the conduct complained of directly and through subsidiaries, agents, employees, and related companies that it directed and controlled and for whose conduct it is responsible.

11.     At all times mentioned herein, Defendant Aon Risk Services Central, Inc., is and was an Illinois corporation with its principal place of business in Chicago, Illinois. Aon Risk Services Central, Inc., performed a statutory merger with Aon Financial Services Group, Inc., and is now liable for its predecessor's conduct. Defendant Aon Risk Services Central, Inc. (or, where applicable, its predecessor Aon Financial Services Group, Inc.), engaged in the conduct complained of directly and through subsidiaries, agents, employees, and related companies that it directed and controlled and for whose conduct it is responsible.

12.     At all times mentioned herein, Defendant Aon Risk Services Southwest, Inc. (f/k/a Aon Risk Services of Texas, Inc.), is and was a Texas corporation with its principal place of business in Dallas, Texas. Defendant Aon Risk Services Southwest, Inc., engaged in the conduct complained of directly and through subsidiaries, agents, employees, and related companies that it directed and controlled and for whose conduct it is responsible.

13.     Plaintiffs are informed and believe, and on that basis allege, that at all relevant times, Defendants, and each of them, have consolidated and coordinated operations, were the agents and employees of each other and were acting within the scope and purpose of their agency and employment, and each defendant has ratified the acts of

his, her or its agents and employees.

## Venue

14.     Venue for this action is appropriate in Mercer County because, among other things, it is the county in which Plaintiffs' causes of action arose and, on information and belief, one in which Aon regularly renders services, including the insurance broker services at issue in this lawsuit.

15.     New Jersey has a compelling state interest in assuring that its domiciled insurers like Clarendon are compensated for losses caused by their managing agents, like Raydon. The same interest applies equally to insurance brokers such as Aon, who are trusted (and legally required) to exercise their professional skill and experience to secure the policies requested by their clients and to discharge other insurance-related tasks, such as providing notice of claims. By requiring brokers to exercise professional care in discharging their duties to clients, the state's interest in promoting the availability of adequate insurance coverage is furthered. Allowing brokers to avoid responsibility for their misconduct resulting in a loss of otherwise responsive insurance would undermine these interests and professional standards of competence, placing the insurance buying public and potential negligence victims at risk of large uncompensated claims or losses.

## Aon Brokers a $100 Million Liability Program

16.     Aon is one of the world's largest insurance brokerage firms, with offices throughout the United States and worldwide. Aon obtains complex and sophisticated insurance arrangements for its clients and, after placement, provides expert claim

management services.  Among other things, Aon commits to providing timely notice of claims and circumstances asserted against its insured clients, to identify all applicable policies, to effectively coordinate the claim process, to establish lines of communication with insurers, and to pursue insurers for reimbursement of defense costs.

17.     In 1996 Stirling Cooke Browne Holdings, Ltd., was engaged in a wide variety of activities in the insurance industry through a series of subsidiaries and related entities.  One of these subsidiaries was Raydon Underwriting Management Company, Ltd., which provided services as a managing general agent for insurers.  Raydon's principal clients were Clarendon National Insurance Company and Clarendon America Insurance Company (collectively, Clarendon), two New Jersey-domiciled insurers.  As part of its responsibilities, Raydon identified, evaluated, and recommended insurance and reinsurance business opportunities to Clarendon.

18.     As a condition of doing business, Clarendon required that Raydon comply with New Jersey financial responsibility laws for managing agents by obtaining professional errors and omissions coverage liability insurance in amounts sufficient to satisfy the New Jersey Department of Banking and Insurance, and to fully compensate Clarendon for any losses that might result from Raydon's negligence.  To meet these requirements and to protect its clients in the event of any negligence by Raydon or other SCBH companies, SCBH retained the Aon entities to place and service a program of errors and omissions liability insurance.  Aon committed to, among other things, provide expert claim management assistance, to notify all potentially responsible insurers for claims, to establish effective channels of claim communications, and to obtain reimbursement for defense costs and indemnity.

19.     After being designated SCBH's broker of record, on information and belief, in connection with placing the policies Aon learned that the single largest source of Raydon's business, and therefore the largest potential errors and omissions liability, was the Clarendon account.  Clarendon was a member of an identifiable class that Aon should

-7-

have foreseen would likely be injured by any failure by Aon to perform its responsibilities, and was an intended beneficiary of the insurance policies Aon was brokering for SCBH.

20.     Aon eventually placed a $50 million "combined" liability insurance program,[5] which included significant coverage for any errors or omissions that might be committed by an SCBH insured.  The policies followed form to a Gulf primary policy, except for provisions specific to excess insurance (i.e., attachment points).[6]  Each of the original four policies was on a "claims made" basis for an original policy term of August 1, 1997, to August 1, 2000, with two subsequent term extensions (brokered by Aon) first to August 1, 2001, then to September 1, 2001.

21.     Effective July 1, 2000, the first layer excess policy issued by Reliance Insurance Company ($10 million X $15 million) was replaced with a policy issued by Nutmeg Insurance Company, a Hartford affiliate.  Aon performed all services necessary to swap the policies.

### Aon's Critical Role in Coordinating Claims Under the Policies

22.     From the program's inception, Aon assumed a critical responsibility to manage claims under the program.  Aon agreed that it would provide claims management services, including: (1) "Reporting to Underwriters"; (2) "Analysis of: [] Policy wording [and] Claims Issues"; (3) "Claims Strategy"; and (4) "Paper Trail Establishment[.]"  Aon actually assumed these and all other notice-related duties under the policies, and

---

[5].     The program was later increased to $100 million with the addition of Starr Excess at $50 million X $50 million).

[6].     Gulf later executed a statutory merger with Travelers Indemnity Company, which assumed all Gulf policy commitments.

SCB/Raydon reasonably relied on Aon to provide adequate notice of claims.

23.     On information and belief, Aon was regularly instructed by SCBH to notify its E&O liability insurers of claims that arose during the policy periods.  SCBH reasonably relied on Aon to reports its claims to the insurers.  Aon encouraged SCB's reliance by actually providing notice of numerous claims under the policies to each of SCB/Raydon's professional errors and omissions and directors' and officers' insurers. SCB and Raydon expressly relied on Aon to perform these services, and Aon invited this reliance.

### The LMX Reinsurance Debacle

24.     Plaintiffs are the beneficial interest holders in a judgment against Raydon arising from Raydon's covered "wrongful acts" within the meaning of the policy. Plaintiffs' judgment arises from Raydon's work for Clarendon in the mid-1990s.  As previously noted, in 1993 Clarendon retained Raydon to serve as an outside program manager and managing general agent.  In the course of discharging its responsibilities, Raydon advised Clarendon to enter an existing reinsurance program known as "PA/LMX."  This program reinsured risks assumed under direct insurance policies that provided personal accident and death benefits to individuals.  In advising Clarendon to enter the business, Raydon assured Clarendon that it had conducted a professional evaluation of the program and that based on its evaluation, Clarendon would receive solid, quality reinsurance protection for all risks above a small $5,000 per loss retention. Raydon negligently failed to disclose (or erred in its evaluation by failing to recognize), however, that the LMX reinsurance structure was flawed, would artificially magnify small losses, and presented a significant risk that Clarendon would not have the reinsurance protection Raydon had represented.

25.     Based on Raydon's advice and professional evaluation, including the

essential reinsurance requirements, Clarendon agreed to write LMX reinsurance beginning with the 1994 year of account.  In managing the program for Clarendon, Raydon prepared applications and disclosures to prospective reinsurers whose protection Clarendon required.  Clarendon participated in the program for one additional year before deciding to terminate the business at the end of 1995.

26.    The PA/LMX reinsurance business proved to be disastrous for Clarendon. The LMX program structure was flawed in a way that magnified small losses as they passed among participating insurers, growing in size as they changed hands.  Eventually, even small ground-up losses would artificially "spiral" until they reached high-level reinsurance layers, appearing on paper as multimillion-dollar losses.

27.    As knowledge of the insurance spiral in the LMX program spread through the insurance industry in the late 1990s, Clarendon was named in a number of arbitrations by higher-level reinsurers.  Those "top level" insurers sought to avoid their reinsurance treaties with Clarendon based on the spiral nature of the LMX program.  In 1999, while the policies were in effect, Clarendon notified Raydon of claims by the top-level insurers and that it held Raydon responsible for any resulting losses.  Clarendon's allegations constitute a "Wrongful Act" within the meaning of the policy.  On information and belief, Raydon forwarded notice of these claims to Aon and instructed Aon to notify its professional liability insurers.

28.    Until February 1999, Clarendon was owned by Lion Holding, Inc., a closely-held company owned by, inter alia, Plaintiffs Ferguson, Kansa, and Imipolex's predecessor.  In early 1999 Plaintiffs sold Lion and its subsidiaries to Hannover.  In an Amended and Restated Stock Purchase Agreement (ARSPA), Plaintiffs were required to indemnify Clarendon for all LMX-related losses up to $50 million and to reduce the sale price by $25 million.  In exchange for these and other considerations, Hannover and Clarendon also agreed that Plaintiffs would receive and have the right to prosecute all rights and claims against third parties, specifically including Raydon, who were legally

responsible for Clarendon's LMX losses.

29.   Under the terms of the Hannover sale, Plaintiffs were required to put in trust $50 million of the purchase price to an escrow account to secure the LMX indemnity.  Shortly afterward, Clarendon's key excess reinsurers in LMX commenced arbitrations seeking to avoid their treaties with Clarendon.  The reinsurers alleged that the program was infected by an artificially-constructed "spiral," which caused small losses artificially to cycle among a small group of reinsurers until they increased to penetrate their high excess layers.  Based on independent analysis and confirmation of these facts, commencing in 2000 Clarendon mitigated its damages by entering into "working group" settlements with all other principal program participants.  The settlements caused Clarendon to lose the basic reinsurance protection upon which it had conditioned its entry into the program.

30.   After Plaintiffs indemnified Clarendon, Plaintiff Ferguson (in his capacity as representative of all Plaintiffs) sued Raydon, as assignees and subrogees of claims arising from Clarendon's LMX-related losses, for its "Wrongful Acts" in placing Clarendon in the LMX business.  On September 28, 2011, the Supreme Court of Bermuda rendered judgment in favor of Ferguson and against Raydon in the amount of $92.137 million.  Raydon, however, was without assets and was unable to satisfy any part of the judgment.

**Raydon's Insurers Decline Coverage for Plaintiffs' Judgment**

31.   After Plaintiffs commenced litigation in this Court to recover a portion of their judgment, Raydon's insurers denied coverage under their policies.  In its answer filed December 1, 2017, Executive Risk Specialty Insurance Company (ERSIC), the second layer excess insurer ($10 million X $25 million), denied coverage.  ERSIC asserted that "Plaintiffs' claims are barred, in whole or in part by Plaintiffs' and/or

Stirling Cooke's and/or Raydon's failure to comply with the requirements of Condition G.1 ("Notice of Claim") of the Gulf primary policy." Condition G provides, among other things, that in the event a claim is made against any insured during the policy year, the insured "shall give written notice of any such Claim as soon as practicable, and shall give the insurer such information and cooperation as it may reasonably require." In connection with managing the SCBH account, Aon expressly assumed the duty to provide such notice and to deliver information in the manner required by Condition G.

32.    By letter dated June 20, 2018, Reliance, the first layer excess insurer ($10 million X $15 million), denied coverage through its liquidator. In the letter, Reliance declared that "Raydon breached the policy's condition precedent by, *inter alia*, failing to provide timely notice of the claim by Clarendon against it as required by the policy." According to the liquidator, "Reliance's first notice of the claim… was by letter [of] July 14, 2011, decades after [Plaintiffs] had asserted a claim against Raydon. … Therefore, Raydon has clearly breached the policy's condition precedent by failing to provide notice of this claim."

33.    Beginning last November, Plaintiffs conducted deposition examinations of Aon and its former employees responsible for handling the SCB/Raydon account. The witnesses uniformly acknowledged that Aon had assumed a duty to deliver notice of claims, including the Clarendon claims, to Raydon's liability insurers. The witnesses testified, however, that Aon had not delivered notice of the Clarendon claim to any excess liability insurer above the Gulf primary layer. As a direct and proximate consequence of this apparent failure, Plaintiffs' ability to recover under excess policies has been placed at risk.

34.    Plaintiffs disagree with the excuses given by Reliance and ERSIC to avoid coverage under their respective policies, and are confident they will establish coverage in the litigation and liquidation proceedings. But if Reliance and ERSIC succeed in avoiding liability due to Aon's failure to give adequate notice under the policies, any

resulting loss of insurance protection is the responsibility of Aon, which had agreed to provide notice of claims and was specifically instructed to notify all insurers of Clarendon's claims.

### First Cause of Action

(Against Aon for Professional Negligence)

35.    Plaintiffs restate the allegations contained in paragraphs 1 through 34, inclusive, and incorporate them by reference as though fully set forth herein.

36.    Aon agreed to act as SCBH's insurance broker to procure professional errors and omissions insurance coverage in the combined amount of $50 million (later increased to $100 million).  As part of its engagement, Aon expressly agreed to provide notice of all actual and potential claims made under those policies, to communicate all relevant claim information to insurers, to respond to insurer questions and requests, and to help obtain the benefits of those policies.  At the time of this undertaking Aon was aware that Clarendon was Raydon's major client and that it could be called on to notify insurers should Raydon breach its duty of care toward Clarendon.

37.    Clarendon did in fact make claims for covered "Wrongful Acts" under the policies, and these claims were timely noticed to Aon with instructions to notify the insurers under the terms of their respective policies.  It was foreseeable from Aon's perspective that failing to properly notify insurers of the claims and provide effective communication to insurers could cause Clarendon and Plaintiffs to lose the ability to recover their losses under the SCBH insurance program.  This is because, as Aon knew, notifying the insurers of claims "as soon as practicable" is a condition precedent to coverage under the policies.  Aon therefore had a duty to Clarendon to notify insurers of the LMX-related claims and to keep an accurate record of doing so (in addition to its duties to Raydon/SCBH, its clients).

-13-

38.    Reliance and ERSIC now contend that Aon failed to provide timely notice of the claims giving rise to Plaintiffs' judgment under their policies, or negligently failed to maintain complete records of same.  Despite Aon's receipt of the Clarendon claims with instructions to notify the insurers of Clarendon's losses, the insurers assert that they didn't receive timely notice and have declined coverage on that basis.  If the insurers are able to avoid coverage due to lack of proper and timely notice, this would be attributable to Aon's failure to discharge Aon's professional duties to its clients.

39.    As a direct and proximate result of Aon's breaches of professional duty described herein, Plaintiffs were directly and foreseeably harmed.  By virtue of Aon's work, training, and experience in the world insurance industry, it was foreseeable to Aon that any failure to exercise due care in providing timely and proper notice to an insurer could jeopardize collection of available insurance benefits, could give insurers a legal basis to avoid payment of third-party losses, and could cause claimants, like Plaintiffs here, to have no source from which to compensate their losses.  Aon has acknowledged in sworn filings with the Securities and Exchange Commission that "E&O claims against [the company] may allege our potential liability for damages arising from" claim handling services, and could include "the failure of our employees or sub-agents, whether negligently or intentionally, to….notify carriers of claims on behalf of our clients…"[7] Plaintiffs were therefore within the zone of harm that might result from any failure by Aon to perform its notice and claim communication responsibilities under the SCBH insurance program.

40.    Sound policy reasons also favor holding Aon liable for any resulting loss of insurance coverage.  Insurance brokers invite reliance on their knowledge and expertise in insurance matters, benefitting in the form of commissions, fees and other

_____

[7]    Aon plc Annual Report Pursuant to Section 13 or 15(d) of the Securities and Exchange Act of 1934, for the fiscal year ending Dec. 31, 2016, p. 13.

-14-

compensation.  Insureds have a right to rely on the representations and assumed duties of professional insurance brokers, including where the broker promises and agrees to notice claims under claims-made policies.  The insurance buying public is harmed when brokers don't live up to their promises because it exposes the public to financial risks they believed were protected against.  Similarly, the general public is harmed when a broker's negligence leads to a loss of insurance because it deprives injured persons of a financially responsible party to make them whole.  These losses would otherwise have to be borne by the innocent injured party when, as here, the tortfeasor is unable to compensate its victims and a broker's negligence causes a loss of responsive insurance.

41.    Plaintiffs will suffer further damages in an amount within the jurisdiction of this Court if Reliance and ERSIC successfully avoid coverage under their policies as a result of Aon's conduct.  Plaintiffs will be harmed in the amount of responsive insurance coverage lost due to Aon's negligence.

## Second Cause of Action

### (Against Aon for Breach of Contract)

42.    Plaintiffs restate the allegations contained in paragraphs 1 through 34 and 36 through 41, inclusive, and incorporate them by reference as though fully set forth herein.

43.    Aon entered into a contract with SCBH, Raydon's parent company, to procure and negotiate a professional errors and omissions and directors' and officers' liability policy for the company.  Aon further agreed, expressly and through a course of conduct, to provide notice of claims or potential claims under the policies after inception.

44.    On information and belief, Aon knew or should have known that Clarendon was a major client of Raydon and was a possible (large) claimant under the policies.

-15-

Clarendon actually made claims against Raydon during the policy period, and Raydon/SCB instructed Aon to notice these claims to its professional liability insurers pursuant to the agreement between SCB/Raydon and Aon. Therefore, Aon knew that Clarendon was a third-party beneficiary of the contract because the policy afforded Clarendon with recourse for losses resulting from any professional errors and omissions by Raydon, and Clarendon actually made a covered claim against Raydon during the policy period. Aon knew or should have known that failure to provide notice would foreseeably deprive Clarendon of otherwise available insurance coverage to respond to its losses.

45.     On information and belief, SCB and/or Raydon performed all conditions required of them under their contract with Aon. Clarendon/Plaintiffs also performed all conditions required of them under the contract, if any.

46.     Aon breached the contract by engaging in the conduct described above.

47.     Clarendon, as a third-party beneficiary to the agreement, was damaged by Aon's breach of contract because it was injured by Raydon's "Wrongful Acts" within the meaning of the policies and made a claim against Raydon during the policy period. Due in part to Aon's apparent breach of its agreement with SCB, Raydon's insurers have denied that the policies respond to Clarendon's claims and the resulting judgment. Plaintiffs are the assignees and subrogees of Clarendon's rights and as third-party beneficiaries under the policies.

48.     Plaintiffs' damages are equal to the dollar amount of responsive insurance lost based on Aon's breaches of contract, together with the increased cost to establish coverage for the judgment under the policies and other amounts to be proven at trial.

### Third Cause of Action

(Against Aon for Declaratory Relief)

49.     Plaintiffs restate the allegations contained in paragraphs 1 through 34, 36 through 41, and 43 through 48, inclusive, and incorporate them by reference as though fully set forth herein.

50.     In or around July 1997, Aon expressly agreed to procure and negotiate the terms of an insurance policy for SCB and its subsidiary Raydon. The requested policy was supposed to provide SCB and its subsidiaries with professional errors and omissions and directors and officers coverage for "Wrongful Acts," including errors, misstatements, misleading statements, acts, omissions, neglect and breaches of duty committed by persons employed by an insured and by an insured. In addition to procuring the policies, Aon agreed to provide claims handling services to SCB and its subsidiaries in compliance with the notice provisions of the policies.

51.     Plaintiffs are the beneficial interest holders in a judgment against Raydon arising from Raydon's covered "wrongful acts" within the meaning of the policy. The claims giving rise to Plaintiffs' judgment were first asserted during the policy periods and, on information and belief, Aon was charged by its client with providing notice of these claims to the insurers.

52.     The insurers have now disclaimed coverage based in part on Aon's conduct described herein. Plaintiffs dispute the insurers can disclaim coverage for any reason and are litigating the coverage issue against two of Raydon's insurers, and made a claim in the liquidation proceedings of a third insurer.

53.     An actual controversy has arisen and now exists between Plaintiffs, on the one hand, and Aon, on the other hand, relating to the latter's liability in the event that

-17-

Raydon's insurers avoid their coverage obligations under the policies as a result of Aon's conduct. Plaintiffs contend that if the insurers obtain a judgment avoiding their policy obligations due to Aon's conduct, Aon would be liable for any resulting loss of insurance coverage. On information and belief, Aon disputes this contention, and contends that it is not liable for any loss of insurance coverage resulting from its actions.

54.    Plaintiffs desire a judicial determination that Aon is liable to Plaintiffs for any loss of insurance coverage resulting from Aon's negligence or breach of contract, or both.

### Prayer

WHEREFORE, Plaintiffs pray for judgment against Defendants:

1.    For general and specific damages in an amount to be proven at trial;

2.    For prejudgment interest;

3.    For a judicial determination that Aon is liable to Plaintiffs for any loss of insurance coverage resulting from Aon's negligence or breach of contract, or both;

4.    For attorneys' fees and costs to the full extent permitted by law; and

5.    For such other and further relief as the Court deems proper.

Dated:  February 22, 2019          McCusker, Anselmi, Rosen & Carvelli, P.C


By:      /s/ Robert E. Bartkus _____
              Robert E. Bartkus
      _____ rbartkus@marc.law

Attorneys for Plaintiffs
Robert D. Ferguson,
Kansa International Corporation, Ltd.,
Bankruptcy Estate, and Imipolex LLC

*Of Counsel*:
Payne & Fears LLP
Attorneys at Law
C. Darryl Cordero (CA Bar No. 126689)
(*pro hac vice* application to be filed)


4846-7430-7962.5

## Notice of Related Actions

The facts and circumstances giving rise to the dispute about which plaintiffs are suing is the subject of another action pending in the New Jersey Superior Court in and for the County of Mercer, *Ferguson v. Travelers*, MER-L-2911-11. A motion to consolidate portions of this lawsuit will be filed shortly. I am not aware of any other action pending in any other court or a pending arbitration proceeding concerning the facts and circumstances giving rise to this complaint, to the best of my knowledge and belief, other than as revealed in the *Ferguson* matter. Further, other than the parties set forth in this complaint and the parties to the related action, I know of no other parties that must be made a part of this lawsuit. I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

Dated:  February 22, 2019                __/s/ Robert E. Bartkus _____

## Jury Demand

Plaintiffs demand trial by a jury on all triable issues of this complaint, under authority of New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

Dated:  February 22, 2019                __/s/ Robert E. Bartkus _____

# Civil Case Information Statement

### Case Details: MERCER | Civil Part Docket# L-000377-19

**Case Caption:** FERGUSON ROBERT  VS AON RISK
SERVICES CO MPANIES,

**Case Initiation Date:** 02/22/2019

**Attorney Name:** ROBERT E BARTKUS

**Firm Name:** MC CUSKER ANSELMI ROSEN & CARVELLI
PC

**Address:** 210 PARK AVE STE 301
FLORHAM PARK NJ 07932

**Phone:**

**Name of Party:** PLAINTIFF : Ferguson, Robert, D

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?**  YES

**Related cases pending:** YES

**If yes, list docket numbers:** MER L-002911-11

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

<u>02/22/2019</u>
Dated

<u>/s/ ROBERT E BARTKUS</u>
Signed

**Exhibit B**

# L03000043164



200023894822

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

☐ PICK-UP     ☐ WAIT     ☐ MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____    Certificates of Status _____

11/06/03--01039--020   **155.00

Special Instructions to Filing Officer:

CALL

205-1387

Office Use Only

03 NOV -6 AM 11: 03
FILED
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

# GEORGE V. MATLOCK
### LAW OFFICES

1545 Raymond Diehl Road, Suite 250
Tallahassee, Florida 32308
email: george.v.matlock@gulfatlantic.com

Tel:  (850) 205-1387.
Fax:  (850) 386-1443

Toll Free: (800) 724-7438



November 6, 2003

*Via Hand Delivery*

Registration Section
Division of Corporations
409 E. Gaines Street
Tallahassee, FL  32399

Re:  Imipolex, LLC

Gentlemen:

     Enclosed for filing is an original and one copy of Articles of Organization for the above Limited Liability Company.  I also have enclosed a check in the amount of $155.00, representing the applicable $125 filing fee plus the $30 fee for a certified copy.

     I request that you call my office to pick up the filed Articles when ready.  Thank you for your assistance.

Sincerely,

George V. Matlock

Enclosures

## ARTICLES OF ORGANIZATION
## OF
## IMIPOLEX, LLC

The undersigned organizer, for the purpose of forming a limited liability company under the Florida Limited Liability Company Act, hereby adopts the following Articles of Organization.

### ARTICLE I

The name of the Limited Liability Company is IMIPOLEX, LLC.

### ARTICLE II

The mailing address and street address of the principal office of the Limited Liability Company is:

IMIPOLEX, LLC
1545 Raymond Diehl Road, Suite 250
Tallahassee, Florida 32308

### ARTICLE III

The period of duration for the Limited Liability Company shall be perpetual except as otherwise provided herein.

### ARTICLE IV

The Limited Liability Company is to be managed by the members and the name(s) and address(es) of the managing member is:

Joseph W. Jacobs
Post Office Box 12200
Tallahassee, Florida 32317

## ARTICLE V

This Limited Liability Company will dissolve without further action of the members upon the death, insanity, bankruptcy, retirement, resignation, expulsion, or the occurrence of any event which terminates the continued membership of any member, unless the company is continued by the consent by remaining members having a majority in interest of the capital and profits of the company.

## ARTICLE VI

The undersigned authorized representative of a member of IMIPOLEX, LLC, certifies as follows:

1.  The above-named Limited Liability Company has at least one member.

2.  The total amount of the cash contributed by the members is:          $    6,000.

3.  If any, the agreed value of property other than cash contributed by members is:                                                                            n/a.

4.  The amount of cash or property anticipated to be contributed by members is:                                                                                n/a.

_____
Joseph W. Jacobs, Authorized Representative

## CERTIFICATION OF DESIGNATION OF REGISTERED
### AGENT/REGISTERED OFFICE

PURSUANT TO THE PROVISIONS OF SECTION 608.415 or 608.507, FLORIDA STATUTES, THE UNDERSIGNED LIMITED LIABILITY COMPANY SUBMITS THE FOLLOWING STATEMENT TO DESIGNATE A REGISTERED OFFICE AND REGISTERED AGENT IN THE STATE OF FLORIDA.

1.      The name of the limited liability company is:       IMIPOLEX, LLC

2.      The name and Florida street address of the registered agent and office is:

Joseph W. Jacobs
1545 Raymond Diehl Road, Suite 250
Tallahassee, Florida  32308

*Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity.  I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.*

Dated: 11-6-2003

Joseph W. Jacobs
Registered Agent

**Exhibit C**

MERCER COUNTY COURTHOUSE
CIVIL CASE MANAGMENT OFFICE
175 SOUTH BROAD ST P O BOX 8068
TRENTON            NJ 08650-0068

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (609) 571-4200
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:  FEBRUARY 22, 2019
                    RE:    FERGUSON ROBERT  VS AON RISK SERVICES CO MPANIES,
                    DOCKET: MER L -000377 19

    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

    DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE MANAGING JUDGE ASSIGNED IS:  HON PAUL INNES

    IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      011
AT:  (609) 571-4200 EXT 4475.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: ROBERT E. BARTKUS
                              MC CUSKER ANSELMI ROSEN & CARV
                              210 PARK AVE STE 301
                              FLORHAM PARK     NJ 07932

ECOURTS

McCusker, Anselmi, Rosen & Carvelli, P.C.
Robert E. Bartkus (#00955 1977)
rbartkus@marc.law
210 Park Avenue, Suite 301
Florham Park, NJ 07932
Telephone: (973) 635-6300
Facsimile: (973) 635-6363

Szaferman, Lakind, Blumstein & Blader, PC
Arnold C. Lakind (#0025819730)
Craig J. Hubert (#0307221990)
101 Gravers Mill Road, Suite 200
Lawrenceville, NJ 08648
Telephone: (609) 275-0400
Facsimile: (609) 275-4511

Attorneys for Plaintiffs Robert D. Ferguson,
Kansa International Corporation, Ltd.,
Bankruptcy Estate, and Imipolex LLC

| | |
|---|---|
| ROBERT D. FERGUSON, a Florida individual; KANSA INTERNATIONAL CORPORATION, LTD., BANKRUPTCY ESTATE, a Finnish corporation; and IMIPOLEX LLC, a Florida limited liability company, as successor in interest to CJH Investments Limited Partnership, a Nevada limited partnership; all as judgment creditors of Raydon Underwriting Management Company Limited, a Bermudian corporation, and as assignees and subrogees of Clarendon National Insurance Company and Clarendon America, <br><br> Plaintiffs, <br><br> v. <br><br> AON RISK SERVICES COMPANIES, INC., a Maryland corporation; AON RISK SERVICES CENTRAL, INC., an Illinois corporation, as successor by merger to Aon Financial Services Group, Inc.; and AON RISK SERVICES SOUTHWEST, INC. f/k/a Aon Risk Services of Texas, Inc, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION—MERCER COUNTY DOCKET NO. MER-L-    -19 <br><br> Civil Action <br><br> **Complaint for Negligence, Breach of Contract and Declaratory Relief and Jury Demand** <br> ----------- |

Plaintiffs Robert D. Ferguson, Kansa International Corporation, Ltd., Bankruptcy Estate and Imipolex LLC (collectively, "Plaintiffs"), with addresses listed below, allege:

## Introduction

1.     This Complaint arises from the Aon defendants' apparent failure to communicate critical claim information to liability insurers, with potentially catastrophic consequences.[1]  Aon styles itself "the leading global provider of risk management services, insurance and reinsurance brokerage…, delivering distinctive client value via innovative and effective risk management and workforce productivity solutions."[2]  In this case, Aon had assumed responsibility for notifying insurers of claims under a $100 million professional errors and omissions liability program.  In connection with claims made by two Clarendon insurance affiliates, however, Aon notified the primary insurer but may have failed to notify all excess insurers above the $15 million primary limits.  As a result of Aon's negligence two excess insurers, Reliance Insurance Company and Executive Risk Specialty Insurance Company, have denied Plaintiffs' claims and refused to perform under their respective policies.

2.     Plaintiffs are subrogated to the rights of two New Jersey-domiciled insurance companies, Clarendon America Insurance Company and Clarendon National Insurance Company.[3]  Clarendon was seriously damaged after Raydon Underwriting Management Company Ltd., an insurance managing general agent, negligently recommended that Clarendon participate in a flawed reinsurance program known as

---

[1].     The three Aon defendants are referred to collectively as "Aon" unless otherwise indicated.

[2].     Aon plc Annual Report Pursuant to Section 13 or 15(d) of the Securities and Exchange Act of 1934, for the fiscal year ending Dec. 31, 2016, p. 3.

[3].     For ease of reference both companies will be collectively referred to as "Clarendon."

PA/LMX.  After Clarendon sustained massive losses in the LMX program, Plaintiffs indemnified Clarendon for its losses and became subrogated to its claims against the agent.  Plaintiffs eventually obtained a $92 million judgment against Raydon for its covered errors and omissions.  After exhausting efforts to satisfy the judgment against Raydon, Plaintiffs turned to its liability insurers.

3.      As Raydon's insurance broker, Aon owed a duty not only to its client but also to third-party claimants who could lose the benefit of a responsive insurance policy if their claims were mishandled.  Well-settled New Jersey law holds such claimants are within the "zone of harm"—i.e., are foreseeable victims—of a broker's negligent failure to properly handle a claim.  Aon knew (or should have known) that failing to provide timely notice of Clarendon's claim put at risk Clarendon's ability to recover its losses.

4.      This action seeks to hold Aon accountable for its apparent negligence. Plaintiffs are pursuing coverage under the policies and are confident they will show that the policies respond to their judgment.[4]  But if any insurers do avoid coverage it will be the direct result of Aon's negligent failure to perform Aon's professional duties.

**The Parties**

5.      Plaintiff Robert D. Ferguson (Ferguson) is a resident of Florida, with a business address at 2549 Barrington Circle, Tallahassee, Florida 32308, and at times relevant to the claims giving rise to Plaintiffs' damages, was a resident of New Jersey. Ferguson sues as assignee and subrogee of Clarendon and as judgment creditor of Raydon Underwriting Management Company Ltd.

---

[4].      Plaintiffs have filed suit in this County against the primary and second excess insurers, and filed a claim in the liquidation proceedings of the first layer excess insurer.  The Mercer County case, which is still pending, is *Robert D. Ferguson, et al. v. Travelers Indemnity Company, et al.*, Docket No. MER-L-2911-11.

6.     At all times mentioned herein, Plaintiff Kansa International Corporation, Ltd., Bankruptcy Estate (Kansa), was and is a Finnish corporation with its principal place of business located at Eteläesplanadi 14, 00131, Helsinki, Finland. Kansa sues as assignee and subrogee of Clarendon and as beneficial judgment creditor of Raydon.

7.     At all times mentioned herein, Plaintiff Imipolex LLC (Imipolex), successor in interest to CJH Investments Limited Partnership (CJH), a Nevada limited partnership, was and is a Florida limited liability company with its principal place of business located at 2549 Barrington Circle, Tallahassee, Florida 32308. Imipolex has succeeded to the interests of CJH as assignee and subrogee of Clarendon, and as beneficial judgment creditor of Raydon.

8.     Plaintiffs Ferguson, Kansa, and CJH, predecessor in interest to Plaintiff Imipolex, are former shareholders of Lion Holding, Inc. Lion is the former owner of Clarendon America Insurance Company and Clarendon National Insurance Company, both admitted property/casualty insurers domiciled in New Jersey and having their statutory home office in Trenton, New Jersey. In February 1999 Plaintiffs sold Lion and the Clarendon companies to Hannover Rückversicherungs-Aktiengesellschaft (Hannover), one of the world's largest reinsurers. Under terms of written agreements between Plaintiffs and Hannover and Clarendon and under principles of equity, Plaintiffs are holders by assignment and subrogation of all Clarendon rights and claims against third parties relating to a reinsurance program known as PA/LMX.

9.     Plaintiffs are creditors under a judgment rendered September 28, 2011, by the Supreme Court of Bermuda in favor of Plaintiff Ferguson and against Raydon in the amount of $92.137 million. The judgment was received in Ferguson's capacity as authorized representative of all former shareholders of Lion Holding, Inc. The judgment, which Plaintiff Ferguson recorded in this Court (Docket No. 294093-11) on or about October 19, 2011, is final, is not subject to any appeal, and is enforceable in the same manner and is entitled to the same full recognition as a local judgment. (New Jersey

-4-

Foreign Country Money-Judgments Recognition Act, N.J.S. 2A:49A-19.)  All Plaintiffs are beneficiaries of and interest holders in the Raydon judgment.

10.    At all times mentioned herein, on information and belief, Defendant Aon Risk Services Companies, Inc., is and was a Maryland corporation with its principal place of business in Chicago, Illinois.  Defendant Aon Risk Services Companies, Inc., engaged in the conduct complained of directly and through subsidiaries, agents, employees, and related companies that it directed and controlled and for whose conduct it is responsible.

11.    At all times mentioned herein, Defendant Aon Risk Services Central, Inc., is and was an Illinois corporation with its principal place of business in Chicago, Illinois. Aon Risk Services Central, Inc., performed a statutory merger with Aon Financial Services Group, Inc., and is now liable for its predecessor's conduct.  Defendant Aon Risk Services Central, Inc. (or, where applicable, its predecessor Aon Financial Services Group, Inc.), engaged in the conduct complained of directly and through subsidiaries, agents, employees, and related companies that it directed and controlled and for whose conduct it is responsible.

12.    At all times mentioned herein, Defendant Aon Risk Services Southwest, Inc. (f/k/a Aon Risk Services of Texas, Inc.), is and was a Texas corporation with its principal place of business in Dallas, Texas.  Defendant Aon Risk Services Southwest, Inc., engaged in the conduct complained of directly and through subsidiaries, agents, employees, and related companies that it directed and controlled and for whose conduct it is responsible.

13.    Plaintiffs are informed and believe, and on that basis allege, that at all relevant times, Defendants, and each of them, have consolidated and coordinated operations, were the agents and employees of each other and were acting within the scope and purpose of their agency and employment, and each defendant has ratified the acts of

his, her or its agents and employees.

## Venue

14.    Venue for this action is appropriate in Mercer County because, among other things, it is the county in which Plaintiffs' causes of action arose and, on information and belief, one in which Aon regularly renders services, including the insurance broker services at issue in this lawsuit.

15.    New Jersey has a compelling state interest in assuring that its domiciled insurers like Clarendon are compensated for losses caused by their managing agents, like Raydon.  The same interest applies equally to insurance brokers such as Aon, who are trusted (and legally required) to exercise their professional skill and experience to secure the policies requested by their clients and to discharge other insurance-related tasks, such as providing notice of claims.  By requiring brokers to exercise professional care in discharging their duties to clients, the state's interest in promoting the availability of adequate insurance coverage is furthered.  Allowing brokers to avoid responsibility for their misconduct resulting in a loss of otherwise responsive insurance would undermine these interests and professional standards of competence, placing the insurance buying public and potential negligence victims at risk of large uncompensated claims or losses.

## Aon Brokers a $100 Million Liability Program

16.    Aon is one of the world's largest insurance brokerage firms, with offices throughout the United States and worldwide.  Aon obtains complex and sophisticated insurance arrangements for its clients and, after placement, provides expert claim

-6-

management services. Among other things, Aon commits to providing timely notice of claims and circumstances asserted against its insured clients, to identify all applicable policies, to effectively coordinate the claim process, to establish lines of communication with insurers, and to pursue insurers for reimbursement of defense costs.

17.     In 1996 Stirling Cooke Browne Holdings, Ltd., was engaged in a wide variety of activities in the insurance industry through a series of subsidiaries and related entities. One of these subsidiaries was Raydon Underwriting Management Company, Ltd., which provided services as a managing general agent for insurers. Raydon's principal clients were Clarendon National Insurance Company and Clarendon America Insurance Company (collectively, Clarendon), two New Jersey-domiciled insurers. As part of its responsibilities, Raydon identified, evaluated, and recommended insurance and reinsurance business opportunities to Clarendon.

18.     As a condition of doing business, Clarendon required that Raydon comply with New Jersey financial responsibility laws for managing agents by obtaining professional errors and omissions coverage liability insurance in amounts sufficient to satisfy the New Jersey Department of Banking and Insurance, and to fully compensate Clarendon for any losses that might result from Raydon's negligence. To meet these requirements and to protect its clients in the event of any negligence by Raydon or other SCBH companies, SCBH retained the Aon entities to place and service a program of errors and omissions liability insurance. Aon committed to, among other things, provide expert claim management assistance, to notify all potentially responsible insurers for claims, to establish effective channels of claim communications, and to obtain reimbursement for defense costs and indemnity.

19.     After being designated SCBH's broker of record, on information and belief, in connection with placing the policies Aon learned that the single largest source of Raydon's business, and therefore the largest potential errors and omissions liability, was the Clarendon account. Clarendon was a member of an identifiable class that Aon should

-7-

have foreseen would likely be injured by any failure by Aon to perform its responsibilities, and was an intended beneficiary of the insurance policies Aon was brokering for SCBH.

20.     Aon eventually placed a $50 million "combined" liability insurance program,[5] which included significant coverage for any errors or omissions that might be committed by an SCBH insured.  The policies followed form to a Gulf primary policy, except for provisions specific to excess insurance (i.e., attachment points).[6]  Each of the original four policies was on a "claims made" basis for an original policy term of August 1, 1997, to August 1, 2000, with two subsequent term extensions (brokered by Aon) first to August 1, 2001, then to September 1, 2001.

21.     Effective July 1, 2000, the first layer excess policy issued by Reliance Insurance Company ($10 million X $15 million) was replaced with a policy issued by Nutmeg Insurance Company, a Hartford affiliate.  Aon performed all services necessary to swap the policies.

**Aon's Critical Role in Coordinating Claims Under the Policies**

22.     From the program's inception, Aon assumed a critical responsibility to manage claims under the program.  Aon agreed that it would provide claims management services, including: (1) "Reporting to Underwriters"; (2) "Analysis of: [] Policy wording [and] Claims Issues"; (3) "Claims Strategy"; and (4) "Paper Trail Establishment[.]"  Aon actually assumed these and all other notice-related duties under the policies, and

---

[5].     The program was later increased to $100 million with the addition of Starr Excess at $50 million X $50 million).

[6].     Gulf later executed a statutory merger with Travelers Indemnity Company, which assumed all Gulf policy commitments.

SCB/Raydon reasonably relied on Aon to provide adequate notice of claims.

23.     On information and belief, Aon was regularly instructed by SCBH to notify its E&O liability insurers of claims that arose during the policy periods.  SCBH reasonably relied on Aon to reports its claims to the insurers.  Aon encouraged SCB's reliance by actually providing notice of numerous claims under the policies to each of SCB/Raydon's professional errors and omissions and directors' and officers' insurers. SCB and Raydon expressly relied on Aon to perform these services, and Aon invited this reliance.

**The LMX Reinsurance Debacle**

24.     Plaintiffs are the beneficial interest holders in a judgment against Raydon arising from Raydon's covered "wrongful acts" within the meaning of the policy. Plaintiffs' judgment arises from Raydon's work for Clarendon in the mid-1990s. As previously noted, in 1993 Clarendon retained Raydon to serve as an outside program manager and managing general agent.  In the course of discharging its responsibilities, Raydon advised Clarendon to enter an existing reinsurance program known as "PA/LMX." This program reinsured risks assumed under direct insurance policies that provided personal accident and death benefits to individuals.  In advising Clarendon to enter the business, Raydon assured Clarendon that it had conducted a professional evaluation of the program and that based on its evaluation, Clarendon would receive solid, quality reinsurance protection for all risks above a small $5,000 per loss retention. Raydon negligently failed to disclose (or erred in its evaluation by failing to recognize), however, that the LMX reinsurance structure was flawed, would artificially magnify small losses, and presented a significant risk that Clarendon would not have the reinsurance protection Raydon had represented.

25.     Based on Raydon's advice and professional evaluation, including the

essential reinsurance requirements, Clarendon agreed to write LMX reinsurance beginning with the 1994 year of account.  In managing the program for Clarendon, Raydon prepared applications and disclosures to prospective reinsurers whose protection Clarendon required.  Clarendon participated in the program for one additional year before deciding to terminate the business at the end of 1995.

26.     The PA/LMX reinsurance business proved to be disastrous for Clarendon. The LMX program structure was flawed in a way that magnified small losses as they passed among participating insurers, growing in size as they changed hands.  Eventually, even small ground-up losses would artificially "spiral" until they reached high-level reinsurance layers, appearing on paper as multimillion-dollar losses.

27.     As knowledge of the insurance spiral in the LMX program spread through the insurance industry in the late 1990s, Clarendon was named in a number of arbitrations by higher-level reinsurers.  Those "top level" insurers sought to avoid their reinsurance treaties with Clarendon based on the spiral nature of the LMX program.  In 1999, while the policies were in effect, Clarendon notified Raydon of claims by the top-level insurers and that it held Raydon responsible for any resulting losses.  Clarendon's allegations constitute a "Wrongful Act" within the meaning of the policy.  On information and belief, Raydon forwarded notice of these claims to Aon and instructed Aon to notify its professional liability insurers.

28.     Until February 1999, Clarendon was owned by Lion Holding, Inc., a closely-held company owned by, inter alia, Plaintiffs Ferguson, Kansa, and Imipolex's predecessor.  In early 1999 Plaintiffs sold Lion and its subsidiaries to Hannover.  In an Amended and Restated Stock Purchase Agreement (ARSPA), Plaintiffs were required to indemnify Clarendon for all LMX-related losses up to $50 million and to reduce the sale price by $25 million.  In exchange for these and other considerations, Hannover and Clarendon also agreed that Plaintiffs would receive and have the right to prosecute all rights and claims against third parties, specifically including Raydon, who were legally

-10-

responsible for Clarendon's LMX losses.

29.     Under the terms of the Hannover sale, Plaintiffs were required to put in trust $50 million of the purchase price to an escrow account to secure the LMX indemnity.  Shortly afterward, Clarendon's key excess reinsurers in LMX commenced arbitrations seeking to avoid their treaties with Clarendon.  The reinsurers alleged that the program was infected by an artificially-constructed "spiral," which caused small losses artificially to cycle among a small group of reinsurers until they increased to penetrate their high excess layers.  Based on independent analysis and confirmation of these facts, commencing in 2000 Clarendon mitigated its damages by entering into "working group" settlements with all other principal program participants.  The settlements caused Clarendon to lose the basic reinsurance protection upon which it had conditioned its entry into the program.

30.     After Plaintiffs indemnified Clarendon, Plaintiff Ferguson (in his capacity as representative of all Plaintiffs) sued Raydon, as assignees and subrogees of claims arising from Clarendon's LMX-related losses, for its "Wrongful Acts" in placing Clarendon in the LMX business.  On September 28, 2011, the Supreme Court of Bermuda rendered judgment in favor of Ferguson and against Raydon in the amount of $92.137 million.  Raydon, however, was without assets and was unable to satisfy any part of the judgment.

**Raydon's Insurers Decline Coverage for Plaintiffs' Judgment**

31.     After Plaintiffs commenced litigation in this Court to recover a portion of their judgment, Raydon's insurers denied coverage under their policies.  In its answer filed December 1, 2017, Executive Risk Specialty Insurance Company (ERSIC), the second layer excess insurer ($10 million X $25 million), denied coverage.  ERSIC asserted that "Plaintiffs' claims are barred, in whole or in part by Plaintiffs' and/or

Stirling Cooke's and/or Raydon's failure to comply with the requirements of Condition G.1 ("Notice of Claim") of the Gulf primary policy." Condition G provides, among other things, that in the event a claim is made against any insured during the policy year, the insured "shall give written notice of any such Claim as soon as practicable, and shall give the insurer such information and cooperation as it may reasonably require." In connection with managing the SCBH account, Aon expressly assumed the duty to provide such notice and to deliver information in the manner required by Condition G.

32.     By letter dated June 20, 2018, Reliance, the first layer excess insurer ($10 million X $15 million), denied coverage through its liquidator. In the letter, Reliance declared that "Raydon breached the policy's condition precedent by, *inter alia*, failing to provide timely notice of the claim by Clarendon against it as required by the policy." According to the liquidator, "Reliance's first notice of the claim... was by letter [of] July 14, 2011, decades after [Plaintiffs] had asserted a claim against Raydon. ... Therefore, Raydon has clearly breached the policy's condition precedent by failing to provide notice of this claim."

33.     Beginning last November, Plaintiffs conducted deposition examinations of Aon and its former employees responsible for handling the SCB/Raydon account. The witnesses uniformly acknowledged that Aon had assumed a duty to deliver notice of claims, including the Clarendon claims, to Raydon's liability insurers. The witnesses testified, however, that Aon had not delivered notice of the Clarendon claim to any excess liability insurer above the Gulf primary layer. As a direct and proximate consequence of this apparent failure, Plaintiffs' ability to recover under excess policies has been placed at risk.

34.     Plaintiffs disagree with the excuses given by Reliance and ERSIC to avoid coverage under their respective policies, and are confident they will establish coverage in the litigation and liquidation proceedings. But if Reliance and ERSIC succeed in avoiding liability due to Aon's failure to give adequate notice under the policies, any

resulting loss of insurance protection is the responsibility of Aon, which had agreed to
provide notice of claims and was specifically instructed to notify all insurers of
Clarendon's claims.

## First Cause of Action

(Against Aon for Professional Negligence)

35.    Plaintiffs restate the allegations contained in paragraphs 1 through 34,
inclusive, and incorporate them by reference as though fully set forth herein.

36.    Aon agreed to act as SCBH's insurance broker to procure professional
errors and omissions insurance coverage in the combined amount of $50 million (later
increased to $100 million).  As part of its engagement, Aon expressly agreed to provide
notice of all actual and potential claims made under those policies, to communicate all
relevant claim information to insurers, to respond to insurer questions and requests, and
to help obtain the benefits of those policies.  At the time of this undertaking Aon was
aware that Clarendon was Raydon's major client and that it could be called on to notify
insurers should Raydon breach its duty of care toward Clarendon.

37.    Clarendon did in fact make claims for covered "Wrongful Acts" under the
policies, and these claims were timely noticed to Aon with instructions to notify the
insurers under the terms of their respective policies.  It was foreseeable from Aon's
perspective that failing to properly notify insurers of the claims and provide effective
communication to insurers could cause Clarendon and Plaintiffs to lose the ability to
recover their losses under the SCBH insurance program.  This is because, as Aon knew,
notifying the insurers of claims "as soon as practicable" is a condition precedent to
coverage under the policies.  Aon therefore had a duty to Clarendon to notify insurers of
the LMX-related claims and to keep an accurate record of doing so (in addition to its
duties to Raydon/SCBH, its clients).

-13-

38.    Reliance and ERSIC now contend that Aon failed to provide timely notice of the claims giving rise to Plaintiffs' judgment under their policies, or negligently failed to maintain complete records of same. Despite Aon's receipt of the Clarendon claims with instructions to notify the insurers of Clarendon's losses, the insurers assert that they didn't receive timely notice and have declined coverage on that basis. If the insurers are able to avoid coverage due to lack of proper and timely notice, this would be attributable to Aon's failure to discharge Aon's professional duties to its clients.

39.    As a direct and proximate result of Aon's breaches of professional duty described herein, Plaintiffs were directly and foreseeably harmed. By virtue of Aon's work, training, and experience in the world insurance industry, it was foreseeable to Aon that any failure to exercise due care in providing timely and proper notice to an insurer could jeopardize collection of available insurance benefits, could give insurers a legal basis to avoid payment of third-party losses, and could cause claimants, like Plaintiffs here, to have no source from which to compensate their losses. Aon has acknowledged in sworn filings with the Securities and Exchange Commission that "E&O claims against [the company] may allege our potential liability for damages arising from" claim handling services, and could include "the failure of our employees or sub-agents, whether negligently or intentionally, to....notify carriers of claims on behalf of our clients..."[7] Plaintiffs were therefore within the zone of harm that might result from any failure by Aon to perform its notice and claim communication responsibilities under the SCBH insurance program.

40.    Sound policy reasons also favor holding Aon liable for any resulting loss of insurance coverage. Insurance brokers invite reliance on their knowledge and expertise in insurance matters, benefitting in the form of commissions, fees and other

---

[7].    Aon plc Annual Report Pursuant to Section 13 or 15(d) of the Securities and Exchange Act of 1934, for the fiscal year ending Dec. 31, 2016, p. 13.

compensation. Insureds have a right to rely on the representations and assumed duties of professional insurance brokers, including where the broker promises and agrees to notice claims under claims-made policies. The insurance buying public is harmed when brokers don't live up to their promises because it exposes the public to financial risks they believed were protected against. Similarly, the general public is harmed when a broker's negligence leads to a loss of insurance because it deprives injured persons of a financially responsible party to make them whole. These losses would otherwise have to be borne by the innocent injured party when, as here, the tortfeasor is unable to compensate its victims and a broker's negligence causes a loss of responsive insurance.

41.     Plaintiffs will suffer further damages in an amount within the jurisdiction of this Court if Reliance and ERSIC successfully avoid coverage under their policies as a result of Aon's conduct. Plaintiffs will be harmed in the amount of responsive insurance coverage lost due to Aon's negligence.

### Second Cause of Action

(Against Aon for Breach of Contract)

42.     Plaintiffs restate the allegations contained in paragraphs 1 through 34 and 36 through 41, inclusive, and incorporate them by reference as though fully set forth herein.

43.     Aon entered into a contract with SCBH, Raydon's parent company, to procure and negotiate a professional errors and omissions and directors' and officers' liability policy for the company. Aon further agreed, expressly and through a course of conduct, to provide notice of claims or potential claims under the policies after inception.

44.     On information and belief, Aon knew or should have known that Clarendon was a major client of Raydon and was a possible (large) claimant under the policies.

-15-

Clarendon actually made claims against Raydon during the policy period, and Raydon/SCB instructed Aon to notice these claims to its professional liability insurers pursuant to the agreement between SCB/Raydon and Aon. Therefore, Aon knew that Clarendon was a third-party beneficiary of the contract because the policy afforded Clarendon with recourse for losses resulting from any professional errors and omissions by Raydon, and Clarendon actually made a covered claim against Raydon during the policy period. Aon knew or should have known that failure to provide notice would foreseeably deprive Clarendon of otherwise available insurance coverage to respond to its losses.

45.     On information and belief, SCB and/or Raydon performed all conditions required of them under their contract with Aon. Clarendon/Plaintiffs also performed all conditions required of them under the contract, if any.

46.     Aon breached the contract by engaging in the conduct described above.

47.     Clarendon, as a third-party beneficiary to the agreement, was damaged by Aon's breach of contract because it was injured by Raydon's "Wrongful Acts" within the meaning of the policies and made a claim against Raydon during the policy period. Due in part to Aon's apparent breach of its agreement with SCB, Raydon's insurers have denied that the policies respond to Clarendon's claims and the resulting judgment. Plaintiffs are the assignees and subrogees of Clarendon's rights and as third-party beneficiaries under the policies.

48.     Plaintiffs' damages are equal to the dollar amount of responsive insurance lost based on Aon's breaches of contract, together with the increased cost to establish coverage for the judgment under the policies and other amounts to be proven at trial.

**Third Cause of Action**

(Against Aon for Declaratory Relief)

49.     Plaintiffs restate the allegations contained in paragraphs 1 through 34, 36 through 41, and 43 through 48, inclusive, and incorporate them by reference as though fully set forth herein.

50.     In or around July 1997, Aon expressly agreed to procure and negotiate the terms of an insurance policy for SCB and its subsidiary Raydon. The requested policy was supposed to provide SCB and its subsidiaries with professional errors and omissions and directors and officers coverage for "Wrongful Acts," including errors, misstatements, misleading statements, acts, omissions, neglect and breaches of duty committed by persons employed by an insured and by an insured. In addition to procuring the policies, Aon agreed to provide claims handling services to SCB and its subsidiaries in compliance with the notice provisions of the policies.

51.     Plaintiffs are the beneficial interest holders in a judgment against Raydon arising from Raydon's covered "wrongful acts" within the meaning of the policy. The claims giving rise to Plaintiffs' judgment were first asserted during the policy periods and, on information and belief, Aon was charged by its client with providing notice of these claims to the insurers.

52.     The insurers have now disclaimed coverage based in part on Aon's conduct described herein. Plaintiffs dispute the insurers can disclaim coverage for any reason and are litigating the coverage issue against two of Raydon's insurers, and made a claim in the liquidation proceedings of a third insurer.

53.     An actual controversy has arisen and now exists between Plaintiffs, on the one hand, and Aon, on the other hand, relating to the latter's liability in the event that

Raydon's insurers avoid their coverage obligations under the policies as a result of Aon's conduct. Plaintiffs contend that if the insurers obtain a judgment avoiding their policy obligations due to Aon's conduct, Aon would be liable for any resulting loss of insurance coverage. On information and belief, Aon disputes this contention, and contends that it is not liable for any loss of insurance coverage resulting from its actions.

54.    Plaintiffs desire a judicial determination that Aon is liable to Plaintiffs for any loss of insurance coverage resulting from Aon's negligence or breach of contract, or both.

<strong>Prayer</strong>

WHEREFORE, Plaintiffs pray for judgment against Defendants:

1.    For general and specific damages in an amount to be proven at trial;

2.    For prejudgment interest;

3.    For a judicial determination that Aon is liable to Plaintiffs for any loss of insurance coverage resulting from Aon's negligence or breach of contract, or both;

4.    For attorneys' fees and costs to the full extent permitted by law; and

5.    For such other and further relief as the Court deems proper.

Dated:  February 22, 2019                    McCusker, Anselmi, Rosen &
                                             Carvelli, P.C


                                             By:      /s/ Robert E. Bartkus
                                                      Robert E. Bartkus
                                                      rbartkus@marc.law

                                             Attorneys for Plaintiffs
                                             Robert D. Ferguson,
                                             Kansa International Corporation, Ltd.,
                                             Bankruptcy Estate, and Imipolex LLC

*Of Counsel*:
Payne & Fears LLP
Attorneys at Law
C. Darryl Cordero (CA Bar No. 126689)
(*pro hac vice* application to be filed)


4846-7430-7962.5


-19-

### Notice of Related Actions

The facts and circumstances giving rise to the dispute about which plaintiffs are suing is the subject of another action pending in the New Jersey Superior Court in and for the County of Mercer, *Ferguson v. Travelers*, MER-L-2911-11. A motion to consolidate portions of this lawsuit will be filed shortly. I am not aware of any other action pending in any other court or a pending arbitration proceeding concerning the facts and circumstances giving rise to this complaint, to the best of my knowledge and belief, other than as revealed in the *Ferguson* matter. Further, other than the parties set forth in this complaint and the parties to the related action, I know of no other parties that must be made a part of this lawsuit. I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

Dated: February 22, 2019                    __/s/ Robert E. Bartkus _____

### Jury Demand

Plaintiffs demand trial by a jury on all triable issues of this complaint, under authority of New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

Dated: February 22, 2019                    __/s/ Robert E. Bartkus _____

# Civil Case Information Statement

### Case Details: MERCER | Civil Part Docket# L-000377-19

Case Caption: FERGUSON ROBERT  VS AON RISK
SERVICES CO MPANIES,

Case Initiation Date: 02/22/2019

Attorney Name: ROBERT E BARTKUS

Firm Name: MC CUSKER ANSELMI ROSEN & CARVELLI
PC

Address: 210 PARK AVE STE 301
FLORHAM PARK NJ 07932

Phone:

Name of Party: PLAINTIFF : Ferguson, Robert, D

Name of Defendant's Primary Insurance Company
(if known): Unknown

Case Type: COMPLEX COMMERCIAL

Document Type: Complaint with Jury Demand

Jury Demand: YES - 6 JURORS

Hurricane Sandy related? NO

Is this a professional malpractice case?  YES

Related cases pending: YES

If yes, list docket numbers: MER L-002911-11

Do you anticipate adding any parties (arising out of same
transaction or occurrence)? NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

Do parties have a current, past, or recurrent relationship? NO

If yes, is that relationship:

Does the statute governing this case provide for payment of fees by the losing party? NO

Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:


Do you or your client need any disability accommodations? NO
 If yes, please identify the requested accommodation:


Will an interpreter be needed? NO
 If yes, for what language:



I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/22/2019
Dated

/s/ ROBERT E BARTKUS
Signed

ROBERT D. FERGUSON, A FLORIDA INDIVIDUAL, ET AL

**Plaintiff**

vs

AON RISK SERVICES COMPANIES, INC., A MARYLAND CORPORATION, ET AL

**Defendant**

20190306175154

Superior Court Of New Jersey

MERCER Venue

Docket Number: MER L 377 19

**Person to be served** (Name and Address):
AON RISK SERVICES SOUTHWEST, INC.
C/O PRENTICE HALL CORPORATION SYSTEM, INC., REGISTERED AGENT
211 E 7TH STREET, STE. 620
AUSTIN TX 78701
**By serving:** AON RISK SERVICES SOUTHWEST, INC.

**Attorney:** ROBERT E. BARTKUS, ESQ.

**Papers Served:** SUMMONS, COMPLAINT FOR NEGLIGENCE, CIS, TRACK ASSIGNMENT NOTICE

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____._____

**Service Data:**  [X] Served Successfully          [ ] Not Served

Date/Time: 03/07/2019          2:50 PM

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

[ ] Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc. (indicate name & official title at right)

Name of Person Served and relationship/title:

VANESSA HERNANDEZ
AUTHORIZED AGENT

**Description of Person Accepting Service:**

SEX: F   AGE: 35   HEIGHT: 5'6"   WEIGHT: 165   SKIN: HISPANIC   HAIR: BLACK   OTHER: GLASSES

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant
[ ] No response on:          Date/Time: _____
                            Date/Time: _____
                            Date/Time: _____

Other:

NICOLE M. HYBNER
My Notary ID # 129086987
Expires August 9, 2020

**Served Data:**
Subscribed and Sworn to me this

7th day of March, 20 19

Notary Signature:

NICOLE M HYBNER          AUG. 09, 2020
Name of Notary          Commission Expiration

I, MIKE TECHOW
was at the time of service a competent adult, over the age of 18 and not having direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct

_____          3, 7, 2019
Signature of Process Server          Date

Name of Private Server: MIKE TECHOW   Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (800) 672-1952

JB

McCusker, Anselmi, Rosen & Carvelli, P.C.
Robert E. Bartkus, Esq. (00009551977)
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
Telephone: (973) 635-6300
Facsimile:  (973) 635-6363

Payne & Fears LLP
C. Darryl Cordero *(Admitted Pro Hac Vice)*
Scott O. Luskin *(Admitted pro Hac Vice)*
400 Continental Boulevard, Suite 600
El Segundo, CA 90245
Telephone: (310) 689-1750
Facsimile: (310) 689-1755

Szaferman, Lakind, Blumstein & Blader, P.C.
Arnold C. Lakind (0025819730)
Craig J. Hubert (0307221990)
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
Telephone: (609) 275-0400
Facsimile: (609) 275-4511

Attorneys for Plaintiffs Robert D. Ferguson,
Kansa International Corporation, Ltd.,
Bankruptcy Estate, Milo Family Limited Partnership,
Imipolex LLC, and Omphalos LLC

| | |
|---|---|
| ROBERT D. FERGUSON, a Florida individual; KANSA INTERNATIONAL CORPORATION, LTD., BANKRUPTCY ESTATE, a Finnish corporation; MILO FAMILY LIMITED PARTNERSHIP, a Delaware limited partnership; IMIPOLEX LLC, a Florida limited liability company, as successor in interest to CJH Investments Limited Partnership, a Nevada limited partnership; and OMPHALOS LLC, a Delaware limited liability company; all as judgment creditors of Raydon Underwriting Management Company Limited, a Bermudian corporation;<br><br>          Plaintiffs,<br>v.<br><br>AON RISK SERVICES COMPANIES, INC., a Maryland corporation, AON RISK SERVICES CENTRAL, INC. an Illinois corporation, as successor by merger to Aon Financial Services Group, Inc.; and AON RISK SERVICES SOUTHWEST, INC. f/k/a Aon Risk Services of Texas, Inc.<br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION—MERCER COUNTY DOCKET NO. L-000377-19<br><br>          Civil Action<br><br><br>**SUMMONS** |

From the State of New Jersey
To The Defendant(s) Named Above: Aon Risk Services Southwest, Inc.

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for Local Services Offices and Lawyer Referral Services is available in the Civil Division management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

DATED: 3/6/19

*Michelle M. Smith*

Michelle M. Smith
Clerk of the Superior Court

Name of Defendant to be Served:  Aon Risk Services Southwest, Inc.

Address of Defendant to be Served:  Prentice Hall Corporation System, Inc., Registered Agent
211 E 7th St., Ste 620
Austin, TX 78701-3218

2

MER-L-000377-19  04/01/2019 10:07:11 AM  Pg 1 of 1 Trans ID: LCV2019573416

ROBERT D. FERGUSON, A FLORIDA INDIVIDUAL, ET AL

                                                                    Plaintiff

                                    vs

AON RISK SERVICES COMPANIES, INC., A MARYLAND CORPORATION, ET AL

                                                                    Defendant

20190306173242

Superior Court Of New Jersey

MERCER Venue

Docket Number: MER L 377 19

**Person to be served** (Name and Address):
AON RISK SERVICES COMPANIES, INC.
THE PRENTICE-HALL CORPORATION SYSTEM, MA, R.A.  7 ST. PAUL
STREET, SUITE 820
BALTIMORE  MD  21202
**By serving:** AON RISK SERVICES COMPANIES, INC.

**Attorney:** ROBERT E. BARTKUS, ESQ.

**Papers Served:** SUMMONS AND COMPLAINT, CIS, TRACK ASSIGNMENT
NOTICE, NOTICE

## AFFIDAVIT OF SERVICE
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.____

**Service Data:**    [X] Served Successfully    [ ] Not Served

Date/Time:  __3/8/19  2:14pm__    _____

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc. (indicate name & official title at right)

Name of Person Served and relationship/title:

__Name Withheld_____

__Legal Representative of_____
The Prentice-Hall Corp.

**Description of Person Accepting Service:**

SEX: _F_  AGE:_22-27_ HEIGHT: _5'3-5'5_  WEIGHT: ___131-145___  SKIN:_Black___  HAIR: _Brown__  OTHER: _____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant
[ ] No response on:            Date/Time: _____
                              Date/Time: _____
                              Date/Time: _____

Other:

**Served Data:**
Subscribed and Sworn to me this

__13th____ day of __March_____, 20_19_

Notary Signature: _Dawn L Brown_____

__Dawn L Brown_____    __9-21-22_____
Name of Notary            Commission Expiration

I,_Quratulain Shoukat_____
was at the time of service a competent adult, over the age of 18 and not having direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

_Quratulain_____    _3/13/2019_
Signature of Process Server        Date

Name of Private Server: _Quratulain Shoukat___  Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (800) 672-1952



DAWN L. BROWN
Notary Public
Baltimore County
Maryland
My Commission Expires Sept. 21, 2022

McCusker, Anselmi, Rosen & Carvelli, P.C.
Robert E. Bartkus, Esq. (00009551977)
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
Telephone: (973) 635-6300
Facsimile:  (973) 635-6363

Payne & Fears LLP
C. Darryl Cordero *(Admitted Pro Hac Vice)*
Scott O. Luskin *(Admitted pro Hac Vice)*
400 Continental Boulevard, Suite 600
El Segundo, CA 90245
Telephone: (310) 689-1750
Facsimile: (310) 689-1755

Szaferman, Lakind, Blumstein & Blader, P.C.
Arnold C. Lakind (0025819730)
Craig J. Hubert (0307221990)
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
Telephone: (609) 275-0400
Facsimile: (609) 275-4511

Attorneys for Plaintiffs Robert D. Ferguson,
Kansa International Corporation, Ltd.,
Bankruptcy Estate, Milo Family Limited Partnership,
Imipolex LLC, and Omphalos LLC

| | |
|---|---|
| ROBERT D. FERGUSON, a Florida individual; KANSA INTERNATIONAL CORPORATION, LTD., BANKRUPTCY ESTATE, a Finnish corporation; MILO FAMILY LIMITED PARTNERSHIP, a Delaware limited partnership; IMIPOLEX LLC, a Florida limited liability company, as successor in interest to CJH Investments Limited Partnership, a Nevada limited partnership; and OMPHALOS LLC, a Delaware limited liability company; all as judgment creditors of Raydon Underwriting Management Company Limited, a Bermudian corporation;<br><br>         Plaintiffs,<br><br>v.<br><br>AON RISK SERVICES COMPANIES, INC., a Maryland corporation, AON RISK SERVICES CENTRAL, INC. an Illinois corporation, as successor by merger to Aon Financial Services Group, Inc.; and AON RISK SERVICES SOUTHWEST, INC. f/k/a Aon Risk Services of Texas, Inc.<br><br>         Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION—MERCER COUNTY DOCKET NO. L-000377-19<br><br>Civil Action<br><br>**SUMMONS** |

From the State of New Jersey
To The Defendant(s) Named Above: Aon Risk Services Companies, Inc.

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for Local Services Offices and Lawyer Referral Services is available in the Civil Division management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

DATED: 3/6/19

_Michelle M. Smith_
Michelle M. Smith
Clerk of the Superior Court

Name of Defendant to be Served:      Aon Risk Services Companies, Inc.
Address of Defendant to be Served:   The Prentice-Hall Corporation System, MA
7 St. Paul Street, Suite 820
Baltimore, MD 21202

2

ROBERT D. FERGUSON, A FLORIDA INDIVIDUAL, ET AL

**Plaintiff**

VS

AON RISK SERVICES COMPANIES, INC., A MARYLAND CORPORATION, ET AL

**Defendant**

20190306175006

Superior Court Of New Jersey

MERCER Venue

Docket Number: MER L 377 19

**Person to be served (Name and Address):**
AON RISK SERVICES CENTRAL INC.
PRINCETON SOUTH CORPORATE CENTER 100 CHARLES EWING BLVD,
SUITE 160
EWING NJ 08638
**By serving:** CORPORATION SERVICE COMPANY, RA.

**Attorney:** ROBERT E. BARTKUS, ESQ.

**Papers Served:** SUMMONS AND COMPLAINT, CIS, TRACK ASSIGNMENT
NOTICE, NOTICE OF RELATED ACTIONS

| **Service Data:** | [X] Served Successfully | [ ] Not Served |

Date/Time: ___3/7/2019 1:55 PM___ _____

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc. (indicate name & official title at right)

## AFFIDAVIT OF SERVICE
(For Use by Private Service)

Cost of Service pursuant to R. **4**:4-3(c)

$ _____._____

Name of Person Served and relationship/title:

JOHNNIE MYERS_____

PERSON AUTHORIZED TO ACCEPT SERVICE

**Description of Person Accepting Service:**

SEX:M_ AGE:21-35_ HEIGHT:5'9"-6'0"___ WEIGHT: 161-200 LBS._ SKIN:BLACK___ HAIR:BLACK___ OTHER:_____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant
[ ] No response on: Date/Time: _____
Date/Time: _____
Date/Time: _____

Other:

**Served Data:**
Subscribed and Sworn to me this
___DY___ day of ___March___, 20 _19_

Notary Signature:_____

JACKELINE GONZALEZ
Name of Notary OF NEW JERSE Commission Expiration
My Commission Expires Dec. 15, 2020

Name of Private Server: JANE NUNN Address: 2009 Morris Avenue UNION, NJ 07083 Phone: (800) 672-1952

I, JANE NUNN,
was at the time of service a competent adult, over the age of 18 and not having direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

M. Jane Nunn_____ 03.08.19
Signature of Process Server                    Date

McCusker, Anselmi, Rosen & Carvelli P.C.
Robert E. Bartkus, Esq. (00009551977)
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
Telephone: (973) 635-6300
Facsimile: (973) 635-6363

Payne & Fears LLP
C. Darryl Cordero *(Admitted Pro Hac Vice)*
Scott O. Luskin *(Admitted pro Hac Vice)*
400 Continental Boulevard, Suite 600
El Segundo, CA 90245
Telephone: (310) 689-1750
Facsimile: (310) 689-1755

Szaferman, Lakind, Blumstein & Blader, P.C.
Arnold C. Lakind (0025819730)
Craig J. Hubert (0307221990)
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
Telephone: (609) 275-0400
Facsimile: (609) 275-4511

Attorneys for Plaintiffs Robert D. Ferguson,
Kansa International Corporation, Ltd.,
Bankruptcy Estate, Milo Family Limited Partnership,
Imipolex LLC, and Omphalos LLC

| | |
|---|---|
| ROBERT D. FERGUSON, a Florida individual; KANSA INTERNATIONAL CORPORATION, LTD., BANKRUPTCY ESTATE, a Finnish corporation; MILO FAMILY LIMITED PARTNERSHIP, a Delaware limited partnership; IMIPOLEX LLC, a Florida limited liability company, as successor in interest to CJH Investments Limited Partnership, a Nevada limited partnership; and OMPHALOS LLC, a Delaware limited liability company; all as judgment creditors of Raydon Underwriting Management Company Limited, a Bermudian corporation; | SUPERIOR COURT OF NEW JERSEY LAW DIVISION—MERCER COUNTY DOCKET NO. L-000377-19<br><br>Civil Action<br><br>**SUMMONS** |
| Plaintiffs,<br>v.<br><br>AON RISK SERVICES COMPANIES, INC., a Maryland corporation, AON RISK SERVICES CENTRAL, INC. an Illinois corporation, as successor by merger to Aon Financial Services Group, Inc.; and AON RISK SERVICES SOUTHWEST, INC. f/k/a Aon Risk Services of Texas, Inc.<br><br>Defendants. | |

From the State of New Jersey
To The Defendant(s) Named Above: Aon Risk Services Central, Inc.

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for Local Services Offices and Lawyer Referral Services is available in the Civil Division management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

DATED: 3/6/19

*Michelle M. Smith*
Michelle M. Smith
Clerk of the Superior Court

Name of Defendant to be Served:   Aon Risk Services Central, Inc.

Address of Defendant to be Served:   Corporation Service Company
Princeton South Corporate Center
100 Charles Ewing Blvd., Suite 160
Ewing, New Jersey 08628

2