UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERT D. FERGUSON, *et al.*, | : Civil Action No. 19-9303 (FLW)(TJB) |
| Plaintiffs, | : **OPINION** |
| v. | : |
| AON RISK SERVICES COMPANIES, INC., *et al.*, | : |
| Defendants. | : |

**WOLFSON, United States Chief District Judge**:

This matter comes before the Court on a motion filed by defendants Aon Risk Services Companies, Inc. ("Aon Inc."); Aon Risk Services Central, Inc. ("Aon Central"); and Aon Risk Services Southwest, Inc ("Aon Southwest") (collectively, "Defendants" or "Aon[1]"), to dismiss the Complaint filed by plaintiffs Robert D. Ferguson ("Ferguson"); Kansas International Corporation, Ltd., Bankruptcy Estate, a Finnish Corporation ("Kansas Intl"); and Impolex LLC's ("Impolex") (collectively, "Plaintiffs"), pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6). For the following reasons, Defendants' motion is **GRANTED,** and Plaintiffs' Complaint is dismissed for lack of personal jurisdiction.

I.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In addressing a motion to dismiss, this Court must accept the allegations from the plaintiff's complaint as true. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003);

---

[1]     The Amended Complaint largely refers to all three defendants as "Aon"; accordingly, this Opinion will also reference the entities collectively, except where a factual difference necessitates distinguishing between them.

1

*Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). Thus, the facts recited below are taken from Plaintiffs' Amended Complaint and do not represent this Court's factual findings.

### a. The Relationship between Clarendon and Raydon

Plaintiffs are the former shareholders of Lion Holdings, Inc. ("Lion"), a holding company for two New Jersey-based insurance companies, Clarendon America Insurance Company and Clarendon National Insurance Company (collectively, "Clarendon"). *See* ECF No. 17, Am. Compl. ¶2. Plaintiffs allege that in the 1990s, Raydon Underwriting Management Company ("Raydon"), a Bermudan entity, and Clarendon collaborated to identify insurance and reinsurance business opportunities. *Id*. at ¶23. Raydon acted as managing general agent for Clarendon, and "[a]s part of its responsibilities, Raydon identified, evaluated, and recommended insurance and reinsurance business opportunities to Clarendon." *Id*. at ¶23. Clarendon was allegedly "the single largest source of Raydon's business." *Id*. at ¶27.

### b. Aon Obtains a Professional Liability Policy for Raydon

As a condition of doing business, Clarendon, allegedly, required that Raydon comply with New Jersey's financial responsibility laws for insurance managing agents and obtain professional errors and omissions ("E&O") coverage liability insurance. *Id*. at ¶24. Plaintiffs assert that Raydon and its parent company, Stirling Cook Browne Holdings, Ltd ("SCBH"), hired Aon to put in place and manage an E&O liability insurance program. *Id*.

Aon PLC, a United Kingdom Company, is "one of the world's largest insurance brokerage firms, with offices throughout the United States and worldwide, including New Jersey," and is the parent company of various entities with the world "Aon" in their names, including Defendants in the instant action. *Id*. at ¶¶22,10. Plaintiff alleges that the all of Aon entities "operate as one" and "hold themselves out to the world as one entity." *Id*. at ¶¶10, 13. The defendants named in this

action are the Aon entities which handled the policy placement, claims notification and related services for Raydon's E&O insurance during the relevant time period. Defendant Aon Risk Services is a Maryland corporation with its principal place of business in Chicago, Illinois. *Id.* ¶16. Aon Central is an Illinois corporation with its principal place of business in Chicago, Illinois. *Id*. at ¶17. It is also registered to transact business in New Jersey and maintains a designated agent for service of process in the state. Aon Southwest is a Texas corporation with its principal place of business in Dallas, Texas. *Id*. at ¶18.

At Raydon's request, Aon eventually put in place "a $50 million 'combined' liability insurance program," which included the E&O insurance. *Id*. at ¶24. During that process, Aon allegedly learned that the single largest source of Raydon's business was the Clarendon account. *Id*. at ¶25. Aon's files[2] also allegedly included a copy of SCBH's prospects for the company's initial public offering, which disclosed that "[t]he [c]ompany's managing general agencies market insurance products and programs developed by the Company on behalf of independent insurance carries, primarily Clarendon National Insurance Company and its affiliates." *Id*. at ¶27. SCBH's application for the E&O policy allegedly indicated that 81% of Raydon's business with admitted insurance carriers was placed through Clarendon. *Id*. at ¶28. Accordingly, Plaintiffs assert that Aon understood that Raydon's E&O policy was intended to benefit Clarendon. *Id*. ¶¶26-32.

c. **Plaintiff's claims against Raydon**

In 1993, Raydon recommended that Clarendon participate in a reinsurance program called "PA/LMX." *Id*. at ¶¶23,35. The PA/LMX program was "disastrous" for Clarendon and caused it to suffer significant losses. *Id*. at ¶¶37-38. In 1999, Lion and its subsidiaries including Clarendon,

---

[2] The files were produced to Plaintiffs in connection with a different lawsuit. Am. Compl. at ¶26.

were sold to another entity. *Id*. at ¶39. As a result of the PA/LMX losses, the purchase price for Clarendon was allegedly reduced by $25 million and Clarendon agreed to indemnify the purchaser an additional $50 million of the PA/LMX losses. *Id*.

In August and September 1999, Clarendon sent Raydon three letters demanding that the company and/or its insurers indemnify Clarendon for the losses incurred as a result of Clarendon's involvement in the PA/LMX program. *See* ECF No. 28, Certification of Robert Leventhal, Exs. X, Letter dated 9/28/1999, W, Letter dated 9/30/1999. Raydon's risk manager allegedly forwarded two of the letters, and instructed Aon to notify all of Raydon's insurers of Clarendon's claims.[3] *Id*. Exs, V, Letter dated 9/14/199 at 4; W, Letter dated 9/30/1999 at 2.

In connection with the sale of Clarendon, Plaintiffs agreed to indemnify Clarendon for losses stemming from the company's participation in the reinsurance program and were accordingly subrogated to Clarendon's professional malpractice claims against Raydon, in that regard. In 2011, Plaintiffs brought suit against Raydon in Bermuda, and obtained a judgement in excess of $92 million. Am. Compl. at ¶9. Because Raydon was unable to satisfy the default judgment, Plaintiffs sought to recover from Raydon's E&O professional liability policies. *Id*. at ¶¶41-42.

### d. Plaintiffs' Attempt to Collect the Raydon Judgment

Thereafter, however, some of Raydon's insurers claimed that they did not receive timely notice of the claim and declined coverage. *Id*. at ¶42. Plaintiffs eventually settled with two of the excess insurers, ERSIC and Reliance, for "substantial discounts." *Id*. at ¶44.

Robert Jackson and Mark Hannington, the two Aon employees allegedly responsible for noticing Clarendon's claims, were deposed as part of the state court coverage action against Raydon's insurers, captioned *Ferguson et al, v. Travelers Indemnity Company et al*, New Jersey

---

[3] It is unclear whether Raydon forwarded the third letter to Aon. *See* Pl. Br. at 10 n. 3.

4

Superior Court, Mercer County Law Division, No. L-2911-11. *See* ECF No. 23-2, Certification of John-Paul Madden ("Madden Cert.") , Ex. 2, R. Deposition of R. Jackson ("Jackson Dep."); ECF No. 28-2, Certification of E,x. G., Deposition of Mark E. Hanington ("Hanington Dep."). Neither Mr. Hannington nor Mr. Jackson could explain why the excess insurers did not receive notice of Clarendon's claims.

Plaintiffs assert that their claims against Raydon were covered under the ERSIC and Reliance excess insurance polices, and would have been paid but for Aon's negligence in failing to notice the claims. Accordingly, Plaintiffs filed the instant lawsuit against Aon in New Jersey state court, which was removed to this Court in April 2019, asserting professional negligence and breach of contract claims. They also seek a declaratory judgment that Aon is liable to Plaintiffs for the reduced value of Plaintiffs' claims against the other insurers, as well as the discounted amount of the settlement with ERSIC and Reliance. In response to a prior motion to dismiss, Plaintiffs filed an Amended Complaint. Defendants now move to dismiss the Amended Complaint, based on lack of personal jurisdiction, improper venue, and for failure to state a claim. The Court addresses the jurisdictional question first.

## II. DISCUSSION

Defendants move to dismiss this matter for, *inter alia*, lack of personal jurisdiction. Def. Br. at 9-21. Plaintiffs argue that this Court has jurisdiction over Defendants, based on two theories: jurisdiction by consent and specific jurisdiction.[4] Pl. Br. at 15-21.

---

[4] Plaintiffs explain that they "are not contending that the Aon defendants are subject to general personal jurisdiction in New Jersey for purposes of this motion." Pl. Br. at 12 n.5. However, Plaintiffs clearly posit that at least one of the defendants, Aon Central, has consented to jurisdiction in this state; jurisdiction by consent is typically analyzed as a form of general personal jurisdiction. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (listing consent as an "example[] that supports exercise of the general jurisdiction of the State's courts and allow the

5

### A. Standard of Review

When reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the Court must accept the plaintiff's allegations as true and resolve disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, once a defendant has raised a jurisdictional defense, the plaintiff must "prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). If an evidentiary hearing is not held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *Id*. A plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987). In order "[t]o meet that burden, [plaintiff] must 'establish [ ] jurisdictional facts through sworn affidavits or other competent evidence.' " *Cerciello v. Canale*, 563 F. App'x. 924, 925 n.1 (3d Cir. 2014) (quoting *Miller Yacht Sales, Inc., v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004)). "Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable." *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F.Supp.2d 629, 633 (D.N.J. 2004) (citing *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992)).

A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe*, 566 F.3d at 330. Since New Jersey's "long-arm statute allows 'the exercise of personal jurisdiction to the fullest limits of due process,' [the Court must] 'look to federal law for the interpretation of the limits on in

---

State to resolve both matters that originate with the State and those based on activities and events elsewhere").

personam jurisdiction.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)). Due process demands that a defendant have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

### a. Personal Jurisdiction by Consent

A defendant may expressly or implicitly consent to the exercise of personal jurisdiction in a particular court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.") (internal citations and quotation marks omitted). One way a party can consent to jurisdiction is through "state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982).

In support of their consent theory of jurisdiction, Plaintiffs assert that one of the Defendants, Aon Central, is registered to do business in New Jersey, appointed a registered agent for service of process, and is currently doing businesses within this state. Based on those contacts, Plaintiffs argue that Aon Central has consented to suit in this state's courts. Pl. Br. at 16. Relying on *Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir. 1991) and *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F.Supp.3d 456 (D.N.J. 2015), Plaintiffs contend that compliance with a state's registration statute amounts to consent to general personal jurisdiction. *Id*. at 23. In response, Defendants assert that following the United States Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), courts within this district have routinely held that registering to do business in New Jersey

does not constitute consent to general jurisdiction in the state, and that the principles underlying "the registration-as consent-theory" of jurisdiction are inconsistent with *Daimler*. Def. Reply Br. at 2-3 (citing *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166 (D.N.J. 2016)). I agree; Plaintiffs' consent to jurisdiction arguments are incorrect.

In *Bane*, the Third Circuit found that the defendant, a foreign corporation, had consented to general personal jurisdiction in Pennsylvania because it was registered to do business in the state. *Id*. The court explained that "[b]y registering to do business in Pennsylvania," the defendant "'purposefully avail [ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" 935 F.2d. at 640 (quoting *Rudzewicz*, 471 U.S. at 472.).[5]

However, *Bane* pre-dates the United States Supreme Court's decision in *Daimler AG v. Bauman*, where the Supreme Court soundly rejected the contention that a corporation may be subject to general jurisdiction in every state in which it conducts business. *See Daimler*, 71 U.S. at 138 (concluding that "subjecting a corporation to general jurisdiction in every state where it engages in a substantial, continuous, and systematic course of business" would be "unacceptably grasping.") (internal citations and quotation marks omitted). There, the Supreme Court explained that the relevant inquiry for assessing general personal jurisdiction is "the operative inquiry whether that corporation's 'affiliations with the State are so "continuous and systematic" as to

---

[5] Although *Bane* specifically addressed consent by registration under the Pennsylvania statute, guided by *Bane* courts in this District have found that companies consent to general jurisdiction when they register to do business in New Jersey, appoint an agent for service of process and actually do business in the state. *See e.g., Otsuka Pharm.,* 106 F.Supp.3d at 456 (holding that defendant companies consented to general jurisdiction when they registered to do business in New Jersey and appointed an agent for service of process); *see also Display Works*, 182 F. Supp. at 175 (collecting cases).

render [it] essentially at home in the forum state.'" *Id*. at 139 (quoting *Goodyear*, 564 U.S. at 919). Accordingly, defendant corporation's "place of incorporation and principal place of business" are the "paradigm all-purpose forums" for finding general personal jurisdiction. *Id*. at 138.

To rely on *Bane* in this context would contravene *Daimler*'s mandate. Rather, post-*Daimler*, at least two courts in this District have concluded that the Supreme Court's decision precludes the exercise of personal jurisdiction over a corporation simply because the corporation is registered to do business in New Jersey. *See Horowitz v. AT&T Inc*., No. 17-4827, 2018 WL 1942525, at *12 (D.N.J. Apr. 25, 2018) (holding that *Daimler* has precluded the practice of registration as a basis for jurisdiction); *Display Works*, 182 F. Supp. 3d at 179 (explaining that if business registration, alone, is sufficient to find jurisdiction "*Daimler's* limitation on the exercise of general jurisdiction to those situations where 'the corporation is essential[ly] at home' would be replaced by a single sweeping rule: registration equals general jurisdiction. That cannot be the law.").[6] Additionally, the New Jersey Appellate Division has similarly found that given *Daimler*'s "clear narrow application of general jurisdiction," the court was not bound by prior precedent

---

[6] Furthermore, New Jersey's registration statue, unlike Pennsylvania's does not forewarn the foreign corporation that compliance with the statute will subject it to the state's general jurisdiction. *Compare* N.J. Stat. Ann. §14A-4.1(1) *with* 42 Pa. Cons. Stat. § 5301(a)(2)(i)-(ii). Both *Horowitz* and *Display Works* found *Bane* – to the extent its holding survives in a post-*Daimler* world[6]—to be distinguishable on that bases as well. *Horowitz*, No. 17-4827, 2018 WL 1942525, at *12 ("The Court agrees that *Bane* is distinguishable due to the differences in the Pennsylvania and New Jersey corporation registration statutes. Notably, the New Jersey Statute does not contain any express language to put a corporation on notice that by registering to do business in New Jersey, it is also consenting to personal jurisdiction in the state."); *Display Works*, 182 F. Supp. 3d at 179 ("New Jersey's registration and service statutes do not constitute consent to general jurisdiction because they do not contain express reference to any such terms"). Additionally, it is not clear that *Bane* is good law in Pennsylvania; a court in the Eastern District of Pennsylvania recently concluded that "the Third Circuit's pre-*Daimler* decision in *Bane*, finding that, by registering to do business in Pennsylvania, a foreign corporation consents to general personal jurisdiction, is irretrievably irreconcilable with the teachings of *Daimler*, and can no longer stand." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 384 F. Supp. 3d 532, 545 (E.D. Pa. 2019).

9

holding that business registration rises to consent to submit to general jurisdiction. *Dutch Run-Mays Draft, LLC v. Wolf Block, LLP*, 164 A.3d 435, 445 (N.J. App. Div. 2017).

Accordingly, consistent with other post-*Daimler* decisions, I hold that an exercise of personal jurisdiction based on registration, alone, would run counter to the principles of due process expressed in *Daimler*. Thus, Aon Central has not consented to personal jurisdiction 1) by virtue of registering to do business in New Jersey, 2) appointing a registered agent for service of process, or 3) engaging in business transactions in New Jersey.[7]

In a footnote, Plaintiffs have requested jurisdictional discovery in order to determine the full extent of Aon Central's contacts with New Jersey. *See* Pl. Br. at n. 8. Plaintiffs suggest that such discovery will reveal that "Aon Central regularly conducts business, services customers, and derives revenue in this forum." *Id*. The Third Circuit has made clear that jurisdictional discovery is not warranted unless the plaintiff "presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mellon Bank*, 960 F.2d at 1223). Plaintiffs have not alleged any facts to show that Aon Central has contacts with New Jersey that are "so substantial and of such a nature" to constitute the type of "exceptional case" where a corporation is "at home" some place other than its principle place of

---

[7] Furthermore, even if this Court were to conclude that Aon Central's compliance with New Jersey's business registration statute constituted consent to general personal jurisdiction in this state, that consent would not extend to the other defendants, Aon Southwest and Aon Inc. Without citing any legal authority, Plaintiffs contend that "[b]ecause Defendants are jointly and severally liable on Plaintiffs' claims, jurisdiction over even one of them would permit this action to proceed in New Jersey." Pl. Br. at 14 n. 6. Plaintiffs are incorrect. Jurisdiction is determined on a defendant by defendant basis and must be determined by looking to each defendant's relationship with the forum. *See Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) (holding that regardless of defendants' joint liability, jurisdiction over each defendant must be established individually).

business or its place of incorporation. *Daimler*, 571 U.S. at n.19. Accordingly, the Court finds that jurisdictional discovery is not appropriate, and Plaintiffs' request is denied. *See Malik*, 710 F. App'x. at 565 (affirming the District Court's denial of jurisdictional discovery, where the plaintiff "did not present factual allegations that suggested with reasonable particularity the possible existence of the requisite contacts between appellees and the forum state to warrant jurisdictional discovery"); *Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 697 F. App'x. 119, 120 (3d Cir. 2017) (affirming denial of request for jurisdictional discovery, where "jurisdictional discovery would have been futile.").

**B. Specific Jurisdiction**

In the absence of general jurisdiction or consent to jurisdiction, a plaintiff may rely on specific jurisdiction where the cause of action is related to, or arises out of, the defendant's contacts with the forum. *IMO Indus., Inc.*, 155 F.3d at 259 (citation omitted). In that connection, establishing specific jurisdiction under the Due Process Clause requires satisfaction of a three-part test. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have "purposefully directed [its] activities" at the forum. *Rudzewicz*, 471 U.S. at 472 (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe*, 326 U.S. at 320). A court's exercise of personal jurisdiction "requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). Critically, "the defendant's conduct and connection

with the forum State [must be] such that he should reasonably anticipate being hauled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Plaintiffs contend that each of the defendants has sufficient minimum contacts with New Jersey to support the exercise of specific jurisdiction over them. Pl. Br. at 21. In particular, Plaintiffs contend that Aon is subject to jurisdiction in New Jersey, because Aon generally "agreed to notice claims under an insurance policy that primarily insured against a New Jersey risk," and in response to Clarendon's letters to Raydon notifying it of the specific claims at issue here, "Aon expressly assumed the duty to a notice a claim by a New Jersey insurer [Clarendon] against Raydon." *Id*. at 21. Plaintiffs assert that by agreeing to notice Clarendon's claims, "Aon assumed a duty to Clarendon to exercise reasonable care," and thus, Defendants purposefully availed themselves of this forum. *Id*. at 19.

In response, Defendants argue that this Court lacks specific jurisdiction over Aon because Plaintiffs' claims do not arise out of, or relate to, any activities that occurred in New Jersey. Def. Br. at 17. Defendants highlight that there is no direct contractual relationship between Clarendon and Aon, nor are there any direct contacts between Defendants and New Jersey. Relying on deposition testimony[8] given by Aon witnesses in another action, Defendants contend that 1) the negotiation, procurement and issuance of the relevant policies occurred in Texas, Connecticut and New York, *see* Madden Cert., Ex. 2, R. Jackson Deposition Tr., at 24:17–25:10, 66:17–68:6, 91:5–20; see also Ex. 3, 11/1/18 D. Neil Deposition Tr., at 73:2–12; 2) "[t]he maintenance of the relationship under the policy occurred primarily in Texas and Georgia," 3) "[t]he SCB risk manager in relationship with Aon was located in Texas and policies were delivered to the SCB

---

[8] Defendants' rely on deposition testimony from Aon witnesses in *Ferguson v. Travelers Indem. Co.*, No. L-2911-11, an insurance coverage action currently pending in the New Jersey Superior Court. *See* Madden Cert., Ex. 2-3.

12

Texas office," and 4) letters regarding policy changes were addressed to SCB's Texas office, *id.* at 59:7–15) and invoices to SCB and confirmations of coverage were issued out of a Texas office, *id.* at 79:7–20; Ex. 3 at 71:25–73:1, 79:16– 23.  Def. Br. at 18.

Plaintiffs have not established that any of the Aon defendants named in this action have sufficient contacts with New Jersey to support the exercise of personal jurisdiction by this Court. Considering the facts as alleged in the light most favorable to Plaintiffs, their jurisdictional facts connecting Aon to New Jersey are as follows: 1) at the time Aon procured the E&O policies for Raydon, it was allegedly aware that Raydon's largest client was a New Jersey insurer; 2) Aon generally agreed to notice any future claims arising under Raydon's insurance policies; and 3) Aon specifically agreed to notice Clarendon's, a New Jersey entity, claims against Raydon to the E&O insurers. These attenuated contacts do not give rise to specific jurisdiction.

Indeed, Defendants do not appear to have had any direct contact with New Jersey or Clarendon, at all.  In fact, Aon's contacts with New Jersey are fortuitous and do not stem from deliberate targeting of New Jersey, but rather, Raydon's unilateral choice in clients.  *See Helicopteros Nacionales de Colombia,* 466 U.S. at 417 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").  The mere fact that Defendants were allegedly aware that Raydon's largest client was a New Jersey-based entity, and procured a professional liability insurance policy on Raydon's behalf is not sufficient to demonstrate that Defendants engaged in sufficient contact with New Jersey such that they "should reasonably anticipate being haled into court in that forum." *Remick*, 238 F.3d at 255 (quoting *Vetrotex*, 75 F.3d at 151) (internal quotation marks omitted).  At no point, did Defendants "purposefully direct [their] activities" toward New Jersey.  R*udzewicz*, 471 U.S. at 472.

Furthermore, contrary to Plaintiffs' assertion that the E&O policies at issue were meant to insure "a New Jersey risk," the policies did not specifically insure Clarendon.[9] Rather, the policies at issue insured Raydon, in Bermuda, and everywhere it did business, including, but not limited to New Jersey. Similarly, although Aon assumed the duty to notice any claims under Raydon's policies, including the specific claims at issue here, Defendants did not assume a duty to Clarendon, but rather to, Raydon. The cases relied upon by Plaintiffs in support of their proposition that Aon incurred a continuing obligation to New Jersey residents, and is thus subject to jurisdiction here, are inapposite.

Each of the cases relied upon by Plaintiffs involve defendants who clearly targeted the forum state. *See* Pl. Br. at 19 (collecting cases); *see also Carbonite Filter Corp. v. C. Overaa & Co.*, 353 F. Supp. 3d 332, 340 (M.D. Pa. 2018) (finding that California contractor which entered into a contract with another California entity to procure anthracite coal was subject to personal jurisdiction in Pennsylvania for claims stemming from contract since "Pennsylvania performance

---

[9] Plaintiff asserts that the rationale underlying its arguments is similar to the reasoning which "underpins the universal rule in the insurance context that by issuing policies that cover risks in a state, the insurer subjects itself to specific jurisdiction for claims relating to the policy. . . . [B]ecause the insurer benefits from entering a contract concerning the forum, it will not be heard to complain when it is haled into court for those contacts." *See* Pl. Br. at 20 n.9 (collecting cases). In the cases upon which Plaintiff relies, however, the insurance companies' contractual commitment to their insureds clearly contemplates suit in the forum. *See e.g.*, *Rossman v. State Farm Mut. Auto. Ins. Co.,* 832 F.2d 282, 287 (4th Cir. 1987) (holding that non-resident insurer was subject to specific jurisdiction in Virginia because automobile insurance policy included Virginia amongst territories of coverage); *CSR Ltd. v. Fed. Ins. Co.*, 146 F. Supp. 2d 556, 560 (D.N.J. 2001)("a liability insurer whose policy 'territory' covers the forum has 'minimum contacts' with that forum, and is constitutionally subject to suit by its insured there in coverage litigation concerning forum-related incidents or claims"). Here, however, Aon was Raydon's insurance *broker,* rather than an insurance carrier. Critically, unlike in the insurance coverage context, where insurance companies "purposefully avail[] themselves, in a 'conscious and deliberate manner' of the risks and benefits of doing business" by including expansive territory-of-coverage clauses, there is no indication that Aon contemplated a suit in New Jersey. Any obligations Aon incurred were to Raydon in Bermuda, and unlike the insurance coverage cases relied upon by Plaintiff, the agreement between Aon and Raydon did not explicitly reference New Jersey.

[was] essential because the anthracite coal [defendant] wanted is primarily found in Pennsylvania and was manufactured in and shipped from Pennsylvania," the state which contains all of the country's anthracite coal reserves"); *Tristar Prod., Inc. v. SAS Grp., Inc.*, No. 08-6263, 2009 WL 3296112, at *3 (D.N.J. Oct. 9, 2009)(finding personal jurisdiction in New Jersey over non-resident defendant for product liability claims where defendant advertised product on national cable tv available in New Jersey, sold the product in at least one retail store in New Jersey, and defendant's interactive website was accessible to New Jersey residents). For example, Plaintiffs cite to *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1399 (9th Cir. 1986), as an example where a court determined that personal jurisdiction could be asserted over a non-resident insurer. In *Haisten*, the defendant was an insurance fund which was established in the Cayman Islands for the specific purpose of providing indemnity insurance for doctors at a California hospital. *Id*. at 1395. The plaintiff, a judgment-creditor in a medical malpractice action, sought to recover from the fund, after one of the fund's insureds declared bankruptcy. *Id*. The fund operated exclusively in the Cayman Islands, was incorporated in the Cayman Islands, maintained its sole office there, and the insureds communicated with the fund through an agent in the Cayman Islands. *Id*. All of the transactions in connection with the policy, including the issuance and delivery of the policy, and the payment of premiums and claims were conducted in the Cayman Islands, as well. *Id*. Despite the fact that the fund exclusively operated in the Cayman Islands, the Ninth Circuit, nevertheless, found that the defendant was subject to personal jurisdiction in California because the fund purposefully directed "its commercial efforts toward California residents" and the insurance agreement "explicitly concerned the indemnification of California physicians against liability solely under California malpractice law. Thus, the effect in California was not only foreseeable, it was contemplated and bargained for." *Id*. at 1398. Unlike in *Haisten*, where the defendant entered into an insurance contract to provide indemnification to doctors in California Aon did not have a direct

15

contractual relationship with Clarendon and did not target Clarendon in New Jersey.[10] Rather, as alleged, Aon agreed to notice any claims arising from Raydon's professional liability policies, regardless of where those claims arose; Aon did not specifically direct its activities at New Jersey. Aon's only specific contact with New Jersey that could arguably be relevant to this litigation is that, Clarendon, as Raydon's client, is allegedly a third-party beneficiary of Aon's agreement with Raydon to notice any claims arising under its E&O insurance policies.[11] None of the identified connections to New Jersey are the type of voluntary contacts necessary to sustain personal jurisdiction. Even assuming, as Plaintiffs allege, that Aon was aware that Raydon's largest client was a New Jersey entity, Defendants did not specifically target or reach out to New Jersey – Raydon did. Thus, Aon's contacts with New Jersey arose from the unilateral acts of a third party and are not sufficient to support the exercise of personal jurisdiction by this Court. *See Contimortgage Corp. v. Great Nw. Ins. Co.*, No. 99-3077, 1999 WL 1128943, at *1 (E.D. Pa. Dec. 3, 1999) (finding that defendant's contacts with Pennsylvania were insufficient to establish specific jurisdiction where the only connection to the forum was that third-party beneficiary of insurance contract was a

---

[10] Even if Clarendon had been in a direct contractual relationship with Aon, that singular contact would not be sufficient to establish that Aon is subject to personal jurisdiction in New Jersey. *See Rudzewicz*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Rather the focus of the specific jurisdiction analysis in contract cases is "the prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.*; *see also General Elec. Co.*, 270 F.3d 144, 150 (3d Cir. 2001)(explaining that when reviewing contract cases for specific jurisdiction, a court should consider "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach."). Here, Plaintiff has not shown that Aon's course of dealing with any party relevant to this litigation had any connection to New Jersey.

[11] It is not clear to the Court that Plaintiffs' predecessor-in-interest Clarendon was, indeed, an intended third-party beneficiary of the agreement between Raydon and Aon. Regardless, the Court need not resolve that question, because, even assuming Clarendon was a third-party beneficiary of Raydon and Aon's agreement, this Court lacks personal jurisdiction over Aon.

16

Pennsylvania entity).

Furthermore, to the extent Defendants have any contacts with New Jersey, those contacts are not directly related to the Plaintiffs' claims. *See Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 418 (explaining that litigation must "arise out of or relate to" defendants' forum activities). Defendants did not have a direct contractual relationship with Clarendon – this case's sole New Jersey lynchpin-- nor did they have any direct communication with Clarendon, whatsoever. Rather, all of Defendants' interactions occurred with Raydon, a Bermudan entity, through Aon's offices in Connecticut, New York, Georgia, Texas, and Illinois. *See* Def. Br. at 18 (describing Raydon's acts related to maintaining and servicing Aon's professional liability insurance); *see also* Madden Cert., Ex. 2, R. Jackson Deposition Tr., at 24:17–25:10, 66:17–68:6, 59:7–15, 91:5– 20; Ex. 3, 11/1/18 D. Neil Deposition Tr., at 71:25-73:12, 79:16– 23. Thus, any contacts Aon may have with New Jersey are clearly unrelated to the instant lawsuit.

Finally, even assuming that Defendants had sufficient contacts with New Jersey and that Plaintiffs' claims were related to those contacts, the assertion of personal jurisdiction by this Court would not comport with the notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). In considering whether the exercise of jurisdiction is fair and reasonable, courts evaluate

> 1) the burden on the defendant,
> 2) the forum State's interest in adjudicating the dispute,
> 3) the plaintiff's interest in obtaining convenient and effective relief,
> 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and
> 5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id*. at 477. In that regard, Plaintiffs argue that, under an analysis of the outlined factors, the exercise of jurisdiction over Aon in New Jersey is both fair and reasonable. Pl. Br. at 23-25. Defendants

assert that New Jersey has no connection this case, the anticipated witnesses are located outside of New Jersey, Plaintiffs are not, currently, New Jersey residents,[12] and New Jersey law does not govern Plaintiffs' substantive claims. Def. Br. at 20.

Here, several of these factors, including the burden on defendant and judicial efficiency, weigh against exercising jurisdiction in New Jersey. None of the Aon defendants are located in New Jersey. Many of the relevant witnesses, including Robert Jackson and Mark Hannington who were in charge of handling the Raydon accounts, are located outside of New Jersey. Furthermore, it is not clear that New Jersey law will apply to either Plaintiffs' breach of contract or professional negligence claims.[13] Thus, subjecting Aon to personal jurisdiction in New Jersey in light of its attenuated contacts with this forum would be inconsistent with the notion of fair play and substantial justice, running afoul of due process.

Accordingly, Defendants Motion to Dismiss is granted due to lack of personal jurisdiction. Since personal jurisdiction is lacking, I do not address Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) and (6).

---

[12] Although Plaintiffs are not, at the moment, New Jersey residents, their predecessor-in-interest, Clarendon, was a New Jersey entity. Furthermore, at the time relevant to the instant claims, Ferguson was allegedly a New Jersey resident. *See* Compl. ¶5. Accordingly, to the extent it bears on the fairness analysis, the Court gives little weight to Defendants' contention that Plaintiffs are not New Jersey residents.

[13] The parties dispute which state's substantive law will apply to this matter. Plaintiffs contend that the relevant law is New Jersey, *see* Pl. Br. at 27-30, while Defendants argue that either Texas, Illinois, or Georgia law governs Plaintiffs' claims, *see* Def. Br. at 26-31. While the Court has not conducted a choice-of-law analysis, under New Jersey's choice of law rules for both contract and tort claims, the law of the state with the "most significant relationship" to the litigation typically applies. *Collins v. Mary Kay, Inc.,* 874 F.3d 176, 183 (3d Cir. 2017) (explaining that in diversity cases courts look to the choice of law rules of the forum state); *Maniscalco v. Brother Int'l Corp. (USA),* 793 F. Supp. 2d 696, 704 (D.N.J. 2011) ("New Jersey has adopted the 'most significant relationship' test of the Restatement (Second) of Conflict of Laws."). In light of this lawsuit's attenuated connection to New Jersey, New Jersey's law is unlikely to apply.

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** without prejudice for lack of personal jurisdiction.

Dated: February 26, 2020	<u>s/ Freda L. Wolfson</u>

Freda L. Wolfson
U.S. Chief District Judge